SANDUSKY PROPERTIES, APPELLEE, *v.* AVENI ET AL., APPELLANTS.

[Cite as Sandusky Properties *v.* Aveni (1984), 15 Ohio St. 3d 273.]

(No. 83-1970—Decided December 31, 1984.)

274

*Burke, Haber & Berick Co., L.P.A., Mr. Stephen T. Parisi, Mr. R. Jeffrey Pollock, Messrs. Wagner & Wagner* and *Mr. Walter R. Wagner,* for appellee.

*Messrs. Arter & Hadden, Mr. M. Neal Rains* and *Mr. David I. Hammond,* for appellants.

*Per Curiam.* This cause stems from an action for specific performance and accounting for rents and profits. It is without question that an action for specific performance, any accounting that might be ancillary to it, and the award of any damages that may under the circumstances appear to be necessary, are matters in equity and may be determined by the trial court in its sound discretion. *Quarto Mining Co.* v. *Litman* (1975), 42 Ohio St. 2d

73, 87 [71 O.O.2d 58]; *Sternberg* v. *Bd. of Trustees* (1974), 37 Ohio St. 2d 115, 118 [66 O.O.2d 257]; 49 Ohio Jurisprudence 2d (1961) 493, Specific Performance, Section 5. In *Spengler* v. *Sonnenberg* (1913), 88 Ohio St. 192, 203, this court accordingly stated that:

"Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case."

See, also, *Huntington* v. *Rogers* (1859), 9 Ohio St. 511, 515-516.

The standard of review in a case such as this is whether the trial court, sitting as a court of equity, abused its discretion. The term "abuse of discretion" has been defined by this court as a decision which is "arbitrary, unreasonable, or unconscionable." *Dayton, ex rel. Scandrick,* v. *McGee* (1981), 67 Ohio St. 2d 356, 359 [21 O.O.3d 225]; *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157 [16 O.O.3d 169]. In *McGee, supra,* we stated as follows:

" 'The meaning of the term "abuse of discretion" * * * connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude * * *.' *Steiner* v. *Custer* (1940), 137 Ohio St. 448 [19 O.O. 148], paragraph two of the syllabus; *Conner* v. *Conner* (1959), 170 Ohio St. 85 [9 O.O. 480]; *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82 [52 O.O.2d 376]; and *State* v. *Adams* (1980), 62 Ohio St. 2d 151 [16 O.O.3d 169]. 'Arbitrary' means 'without adequate determining principle; * * * not governed by any fixed rules or standard.' Black's Law Dictionary (5th Ed.). 'Unreasonable' means 'irrational.' * * *" *Id.* at 359.

An abuse of discretion connotes more than an error of judgment, *State* v. *Adams, supra,* and results "only when no reasonable man would take the view adopted by the trial court." *Pembaur* v. *Leis* (1982), 1 Ohio St. 3d 89, 92.

The general rule as to damages payable in specific performance actions is found in Annotation (1949), 7 A.L.R. 2d 1204. This rule, which is recognized by virtually every jurisdiction, is best stated as follows:

"When specific performance is granted of a contract to convey real property, the court will enforce the equities of the parties in such manner as to put them as nearly as possible in the position they would have occupied had the conveyance been made when required by the contract. It will compensate the purchaser for any loss of the use of the property during the delay by awarding him the rental value of it, or the net rents and profits of it, for the period. It will compensate the vendor for any loss of the use of the purchase money during the delay by awarding him the appropriate interest for the proper period. To either party it will give credit for such expenditures in relation to the property, or otherwise occasioned by the delay, as should be borne by the other. * * *" *Id.* at 1211-1212.

See, also, Annotation (1982), 11 A.L.R. 4th 891, and cases cited therein; 71 American Jurisprudence 2d (1973) 147-149, Specific Performance, Sections 115 and 116.

This statement of law is an attempt to place the parties in the relative position that they would have been in had the sale of the real estate proceeded according to the agreement. The seller should be reimbursed for his added expenses, as well as the loss of his use of capital funds. Conversely, the purchaser should have the benefits of the property that he would have received had he been in possession. *Hellkamp* v. *Boiman* (1970),. 25 Ohio App. 2d 117, 122 [54 O.O.2d 237]; *Meineke* v. *Schwepe* (1952), 93 Ohio App. 111, 115 [50 O.O. 244]; 49 Ohio Jurisprudence 2d, *supra,* at 616, Section 90.

The object of a court in an equitable accounting ancillary to a decree for specific performance is to put the parties in the position which they would have been in had the contract been performed on the agreed date. *Hellkamp* v. *Boiman, supra;* 49 Ohio Jurisprudence 2d, *supra,* at Section 90. As the court stated in *Hellkamp, supra:*

"There appears to be no question that when a decree for specific performance in the sale of real estate is granted to the purchaser he is entitled to be put in the position he would have been in had the contract of sale and purchase been carried out on the date agreed upon." *Id.* at 122.

In order to accomplish this end, courts in equity have long held that in determining the accounting ancillary to a decree of specific performance for the purchase of real property, the land is the equitable property of the vendee, but held by the vendor in trust for him, and the purchase price is the equitable property of the vendor, but held in trust for him by the vendee. *McCrea* v. *Martien* (1876), 32 Ohio St. 38, 42-43. Upon specific performance, the vendor holds the property in trust for the vendee and the vendee holds the earnings on the purchase price in trust for the vendor. See Pomeroy, Specific Performance of Contracts (3 Ed. 1926) 892, Section 429.

In addition to decreeing specific performance, a court may award the parties further sums to which they are found to be entitled when it is necessary in order to attain complete justice and equity. A court of equity is authorized to render such awards on the principle that it may exercise its equitable jurisdiction to the extent of administering full relief which the case demands. *Hull* v. *Bell Bros. & Co.* (1896), 54 Ohio St. 228, 239.

Appellants set forth the basic argument here, as they did in the appellate court, that Sandusky Properties has received a "double interest" recovery in being awarded the statutory interest upon the unpaid balance of the purchase price; and also being awarded, by way of the accounting for rental profits, the interest it had paid upon its purchase money mortgage. Appellants contend that had the transaction closed on April 1, 1980, the balance to be received by appellee, after discharging the existing mortgage, would have been approximately $647,509 ($1,400,000 less approximately $752,491 principal due on the outstanding mortgage) and not the entire purchase price of $1,450,000 less $50,000 earnest money. Appellants proceed to argue that since appellee was awarded its mortgage in-

terest, then it should not have been awarded statutory interest on the entire purchase price but, rather, only on the equity balance of its mortgage.

Upon initial thought, such an argument would appear to possess a fair degree of soundness. However, upon a complete analysis of the attendant business and financial circumstances, the judgment of the trial court falls into equitable place. It is our opinion that appellants' position would take the vendor, Sandusky Properties, back to April 1, 1980, the contract closing date, but would not relate the effect of the delay in closing, as to itself, for the period between April 1, 1980 and June 15, 1982, the date the property was transferred. Had the transaction actually occurred as contracted on April 1, 1980, Sandusky Properties admittedly would have received a balance of approximately $647,509, and not $1,400,000. Title to the property, however, would have transferred and the appellants, not Sandusky Properties, would have henceforth managed it from April 1, 1980. In essence, appellants' argument assumes both that Sandusky Properties closed the deal and received payment in full on April 1, 1980, and at the same time did not sell the property but continued to manage it until June 15, 1982.

In reviewing the hypothetical consequences of a sale on the appointed date of April 1, 1980, the result must be analyzed in view of appellee as a vendor receiving payment and appellants as vendees receiving and administering the property. Had the transaction closed on April 1, 1980 and appellee received payment of $1,400,000, it would have discharged its mortgages and realized approximately $647,509 and would have no longer managed the property or been responsible for an accounting with respect thereto. As a consequence, Sandusky Properties could have invested that money and received interest thereon which was reasonably calculated at fifteen percent[2] during the period April 1, 1980 through June 15, 1982. Interest at fifteen percent on the equity balance of $647,509 for this period would yield $214,476. More importantly, Sandusky Properties would not have owned the property and would not have been responsible for any accounting or offset whatsoever. Therefore, on the assumption used by the appellants of a consummated transaction on April 1, 1980, Sandusky Properties could argue that it was entitled to an award of $214,476 representing the lost value of its equity.

Furthermore, assuming the transaction closed on April 1, 1980, the court would have to review the economic consequences of the appellants' management of the property from such date. The immediate consequence, and perhaps the determining factor in the election by appellants not to perform, would have been the high interest rates which they would have incurred in financing the property. An officer at a savings and loan com-

---

[2] Evidence was submitted to the trial court, including publications of the Federal Reserve System, which would indicate that the interest rates for the period would be in the average range of fifteen percent.

pany testified at trial that he was negotiating with the appellants to mortgage the property at $1,500,000, more than its full purchase price, and at a rate of eighteen percent for two years. The consequences of this tremendous interest carrying cost are immediately obvious. If appellants had financed the entire purchase price for eighteen percent as had been negotiated, the interest alone from the period April 1, 1980 to June 15, 1982 would have been $556,471, or more than the gross income for the entire period. When added to the other allowable expenses of operation of the apartment units,[3] the interest at eighteen percent would have theoretically forced a net cash loss to appellants on the property of $277,872.

The determination of whether to award ancillary compensation in equity in the process of this accounting is within the sound discretion of the court. Here, the trial judge heard and reviewed this case in all of its aspects from the initial issues presented upon the merits of the specific performance complaint (which was later appealed to the court of appeals and to this court) through the accounting process hearings. The trial court was well aware of all the surrounding circumstances of the parties as well as the attendant financial aspects of the case. It could have well considered not only the factors surrounding the vendor's loss of the use of the purchase price, but also the monetary advantages that may have accrued to the vendee by the delay in closing the transaction. The award to Sandusky Properties of the retained value of the purchase price at the statutory rate of eight percent would have given a benefit to the defaulting vendees in that the latter had the time value of $1,400,000 at such statutory rate, rather than the prevailing rate of approximately fifteen percent or the rate of eighteen percent at which the evidence showed the appellants had been negotiating.

As stated previously, the object of a court in an equitable accounting ancillary to a decree for specific performance is to put the parties in the position which they would have been in had the contract been performed on the agreed date. *Hellkamp, supra.* Upon a consideration of all of the facts and circumstances that were before the court, we must conclude that the trial court did not abuse its discretion in its determination on the ancillary matters of accounting within this specific performance proceeding.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

W. Brown, Sweeney, Locher, Holmes, C. Brown and J. P. Celebrezze, JJ., concur.

Celebrezze, C.J., dissents.

---

[3] This sum represents the amount of trial court approved expenses not including, however, the mortgage interest payments totaling $134,308, the loan placement fee of $6,845, or the management fee which amounted to $16,749, due to the fact that appellants would be managing the property as owners.