OPINION
Defendant-appellant and cross-appellee Thomas E. Larkin [hereinafter appellant] appeals the December 30, 1998, Judgment Entry of the Tuscarawas County Court of Common Pleas. The trial court found, under the doctrine of mutual mistake, that the contract between the parties to sell and buy a lot should be vacated. The trial court further found that plaintiff-appellee and cross appellant [hereinafter appellee] Arvind Patel, the purchaser, should recover the downpayment made by him pursuant to the contract, less pre-cancellation costs of improvements to the lot made by the Seller, Mr. Larkin. Arvind Patel cross-appeals the December 30, 1998, Judgment Entry's as to the award of pre-cancellation costs of improvements to the lot to Thomas Larkin.
 STATEMENT OF THE CASE AND FACTS
As a result of the sale of a lot in the City of New Philadelphia, appellee Arvind Patel (buyer) filed a complaint against appellant Thomas E. Larkin (seller). The complaint stated a claim for breach of contract. It alleged that appellant failed to complete various work on the property as required under the terms of the contract, that appellant did not complete the work by the date for closing and that appellant did not complete the closing by the date agreed even though time was of the essence in the contract. The complaint also stated a claim for fraud alleging that appellant had concealed the existence of a coal mine underlying the lot. Appellee alleged this mine seriously devalued the lot and appellee's ability to develop the property as a home site. Appellee sought rescission of the contract, return of his $7,000.00 deposit and $50,000.00 in punitive damages. (Appellee also sought an order prohibiting appellant from conveying the lot to someone else while the litigation was pending.) Appellant filed an answer and counterclaim on June 13, 1998, raising the defenses of failure to state a claim, failure to plead fraud in accordance with Civ.R. 9, failure to mitigate, laches and unclean hands. The counterclaim alleged that appellant had breached the contract by failing to pay the balance due on the lot. The counterclaim requested the trial court to order the appellant to pay the balance due plus interest and attorney's fees. (specific performance) The case was tried to the court on November 24, 1998. The following facts were adduced at trial: On or about October 16, 1995, Arvind Patel and Thomas E. Larkin entered into a contract by which Mr. Larkin agreed to sell and Mr. Patel agreed to buy a vacant lot in New Philadelphia, Ohio. The lot is generally described as Lot #3, Donahey Estates, Eighth Addition. Mr. Patel bought the lot with the intention of building a home upon it. The contract was prepared by Mr. Larkin and contained the following language:
 "THE LOT INCLUDES: 4" SANITARY SEWER SERVICE, 3/4" COPPER WATER SERVICE 3 ft. BEHIND CURB, GAS MAIN ON SOUTH SIDE OF STREET, ELECTRIC, T.V. AND TELEPHONE. WE WILL CUT IN DRIVEWAY, CLEAR TREES FOR HOME AND PARKING AT REAR OF GARAGE."
The purchase price of the lot was $47,000.00. Pursuant to the contract, Mr. Patel paid Mr. Larkin $7,000.00 upon entering the contract. The remaining $40,000.00 was to be paid upon closing. The contract identified the closing date as October 28, 1995. However, closing was delayed beyond October 28, 1995, due to delays caused by legal issues between Mr Larkin and the City of New Philadelphia regarding the annexation of the road abutting the lot. Initially, neither party expressed a concern over the delay. However, prior to closing, Mr. Patel became aware that an underground mine existed in the area of the lot. Evidence showed that the coal mine was under lots #1 and #2 of the development. Lots #1 and #2 are adjacent to lot #3, the lot in question. Testimony reflected that neither party knew of the existence of the coal mine at the time the contract was formed. On April 26, 1996, Mr. Patel sent a letter to Mr. Larkin canceling the agreement because the sale of the property was "not closed as per agreement and it has been discovered that there is a significant likelihood of underground coal mines beneath the property." The cancellation letter was received by Mr. Larkin on April 30, 1996. Mr. Larkin testified that, prior to receiving the notice of cancellation, he incurred expenses under the contract of $2,378.00 for tree removal and cutting the driveway. These services were performed by Larkin Sewer Contractors, Inc. There was some conflicting evidence as to whether the fees for these services were accurate. Mr. Larkin further testified that, as a result of the custom excavation performed by Mr. Larkin to prepare the lot for Mr. Patel's home building plans, the value of the lot was reduced to $32,000.00. At the conclusion of Mr. Patel's case in chief, the trial court granted Mr. Larkin's motion to dismiss Count Two of Mr. Patel's Complaint, which related to fraud, pursuant to Civ.R. 41(B)(2). Subsequent to the trial, the parties submitted written closing arguments and proposed findings of facts and conclusions of law. On December 30, 1998, the trial court issued a Judgment Entry, in which it awarded judgment in favor of Mr. Patel in the amount of $4,622.00. In the Findings of Fact, the trial court found the following: 1. On or about October 16, 1995, the parties entered into a contract for the purchase/sale of Lot #3, Donahey Estates, Eighth Addition (LOT) in New Philadelphia, Ohio. The agreement also provided that:
 The Lot Includes: 4" Sanitary Sewer Service, 3/4" Copper Water Service 3 Ft. Behind Curb, Gas Main on South Side of Street, Electric, T.V. and Telephone. We Will Cut In Driveway, Clear Trees for Home and Parking At Rear of Garage.
 The contract also provided that the parties would agree on which trees would be cleared from the Lot and where the driveway would be cut to the property.
 2. The Agreement called for a closing date of October 28, 1995, but did not contain any provision stating that "time is of the essence."
 3. Closing on the property was delayed beyond the October 28, 1995, date by reason of legal matters between Mr. Larkin and the City of New Philadelphia regarding annexation of the road abutting the lot. Both parties appeared to be desirous of completing the Agreement and consented to the delay.
 4. However, the plaintiff, before closing, discovered that an underground coal mine existed in the area of the Lot and after investigation, confirmed that there is an underground coal mine in the Number 6 coal that underlies Lot Number 1 and 2 which are adjacent to the subject Lot.
 5. The defendant incurred expenses under the agreement of $2,378 for tree removal and cutting of the driveway.
 6. On April 26, 1996, plaintiff, through his attorney, sent a letter to the defendant canceling the agreement because of the discovery of the underground coal mine beneath the property. The notice of cancellation was received by the defendant on April 30, 1996.
 7. There is no evidence that either party was aware of the underground mine at the time the contract was formed.
The court issued the following Conclusion of Law:
 8. A mutual mistake as to a material fact in a real estate transaction is grounds to rescind such transaction absent failure to exercise ordinary care to discover the mistake on the part of the party seeking recission. Reilley v. Richards (1994), 69 Ohio St.3d 352, 353."
The trial court found:
 [U]nder the doctrine of mutual mistake and upon notice, the contract for sale/purchase of Lot 3 should be vacated and the plaintiff should recover from the defendant his down payment of $7000 less the pre-cancellation costs of improvements to the ground made at the direction of the plaintiff under the terms of the agreement, namely $2,378. It is Ordered therefore that the plaintiff shall recover from the defendant the amount of $4,622 and his costs herein. The defendant's counterclaim seeking specific performance is dismissed in accordance with the vacation of the sales/purchase agreement ordered above, subject however to the set-off for pre-cancellation expenses as noted above.
Subsequently, both parties filed timely Notices of Appeal. It is from the December 30, 1998, Judgment Entry that the appellant raises the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN RESCINDING THE CONTRACT BETWEEN THE PARTIES UNDER THE THEORY OF MUTUAL MISTAKE, WHICH WAS NEVER ALLEGED OR RAISED BY PLAINTIFF AND NEVER ADDRESSED BY EITHER PARTY.
 ASSIGNMENT OF ERROR II THE TRIAL COURT'S JUDGMENT CONCERNING MUTUAL MISTAKE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR III THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT MAKING DEFENDANT WHOLE AFTER RESCINDING THE CONTRACT.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ERRED IN FAILING TO ORDER SPECIFIC PERFORMANCE OF THE CONTRACT.
Appellee/cross-appellant raises the following assignment of error in regards to the December 30, 1998, Judgment Entry:
 CROSS ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN AWARDING DAMAGES OF $2,378.00 TO TOM LARKIN.
 I
In his first assignment of error, appellant claims that the trial court committed reversible error when it rescinded the contract between the parties under the theory of mutual mistake. We agree. As the trial court stated in its decision, "[a] mutual mistake as to a material fact in a real estate transaction is grounds to rescind such transaction absent failure to exercise ordinary care to discover the mistake on the part of the party seeking rescission." Reilley v. Richards (1994), 69 Ohio St.3d 352, 353,632 N.E.2d 507. A mistake is material to a contract when it is a mistake as to a basic assumption on which the contract was made that has a material effect on the agreed exchange of performances. Reily. "Thus, the intention of the parties must have been frustrated by the mutual mistake." Id. Testimony in the case sub judice revealed that the parties' intention in the sale and purchase of the lot, was the building of a home on the lot by appellee, Mr. Patel. Therefore, to allege a claim of mutual mistake, the appellee would have had to allege that: 1) both parties thought the land was buildable at the time of the contract, and 2) the land was unbuildable at the time of the contract. We note that appellee did not specifically raise the claim of mutual mistake in his complaint, nor did appellant specifically raise the claim in his answer/counterclaim. However, appellee did allege in his complaint that "Plaintiff (appellee) learned that the Defendant (appellant) had concealed the existence of an underground coal mine underlying the lot that seriously devalued the lot and the Plaintiff's ability to develop the property as a home site." This language was included under the fraud claim of the appellee, but we find it was sufficient to notify the appellant of the issues which comprise the claim of mutual mistake. We find this because: 1) the allegation that appellant concealed the underlying coal mine put appellant on notice that he may have to defend on whether he knew or did not know of the mine at the time of the contract. If he did know, but did not tell the appellee, then he concealed it. If appellant did not know it was there, then any representations made by him that the mine was not there were mistaken representations; 2) the allegation that the mine was underlying the lot put the appellant on notice that he may have to defend as to whether a mine was under the lot; 3) the allegation that the mine "seriously devalued . . . the [appellee's] ability to develop the property as a home site" put the appellant on notice that he may have to defend as to whether appellee's ability to build a home was thwarted by the presence of the mine. Had the fraud theory been before the trial court throughout the appellee's and appellants' cases in chief, the trial court would not have abused its discretion in considering the theory of mutual mistake based on the notice set forth in the pleadings. "Whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed, absent a showing of an abuse of discretion." Bainbridge Township Trustees, 5 Ohio St.3d 41, 46. Abuse of discretion connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. However, the trial court dismissed the fraud claim after the plaintiff-appellee's case in chief. The remainder of the trial deals primarily with defendant-appellant's defense to the issue of whether defendant-appellant breached the contract by failing to perform certain work and by failing to close by the agreed date. In other words, the defendant-appellant no longer could present a defense to the issues raised in the fraud claim of the plaintiff-appellee. These are the issues regarding mistake versus fraud, the presence or non-presence of a mine under lot #3 and the buildability or non-buildability of lot #3. The Ohio Supreme Court stated guidelines for allowing implied amendments to the pleadings pursuant to Civil Rule 15 (B): 1. Whether they [the parties] recognize an unpleaded issue entered the case.
2. Whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be retried on a different theory.
3. Whether the witnesses were subject to extensive cross-examination on the issue. Bainbridge Township Trustees, supra at 41, paragraph 1 of syllabus.
We find that once the trial court had dismissed the fraud claim after plaintiff-appellee's case in chief, the criteria for allowing an implied claim under Bainbridge Township Trustees, supra, for mutual mistake could not be met. We conclude that the trial court did abuse its discretion by considering the issue of mutual mistake when the defendant-appellant, prior to his case in chief, had reason to believe the issues related to mutual mistake were no longer before the trial court. The first assignment of error is sustained.
 II
In appellant's second assignment of error, appellant contends that even if the issue of mutual mistake of a material fact was properly before the court, the trial court's conclusion that there was a mutual mistake of a material fact is against the manifest weight of the evidence. However, judgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus,376 N.E.2d 578. Mr. Larkin contends that the record is devoid of any evidence that can support the essential elements of the trial court's judgment regarding mutual mistake. We agree. As indicated in assignment of error I, a buyer of real estate is entitled to a rescission of the contract where there is a mutual mistake as to a material part of the contract and where the complaining party was not negligent in discovering the mistake. Reilley v. Richards (1994), 69 Ohio St.3d 352,353, 632 N.E.2d 507. A mistake is material to a contract when it is a mistake as to a basic assumption upon which the contract was made. Id. at 353. The "intention of the parties must have been frustrated by the mutual mistake." Id. In this case, the intention was for a home to be built on the lot purchased by Mr. Patel. Both parties cite to the case of Reilley v. Richards, supra. to support their positions. In Reilley, the Ohio Supreme Court rescinded a residential real estate purchase agreement on the grounds of mutual mistake. The court found that mutual mistake existed when the purchaser purchased land on which he intended to build a home, only to find that neither the purchaser nor the seller was aware that the property was substantially located in a flood plain. Evidence was presented that the purchaser could not build on the site. The court, therefore, found that the location of the lot substantially in a flood plain severely frustrated the purchaser's ability to build a home, as intended. Such a frustration of intention of the parties, based upon both parties' failure to appreciate the location of the flood plain, the purpose for purchasing the lot, a lack of negligence on the part of the complaining party and the unbuildability of the site, constituted a mutual mistake and grounds for rescission. Reilley v. Richards (1994), 69 Ohio St.3d 352,353, 632 N.E.2d 507. The party alleging the mutual mistake bears the burden to prove its existence by clear and convincing evidence. General Tire, Inc. v. Mehlfeldt (1997), 118 Ohio App.3d 109,115. When the intention of the parties was to build a home on the property in question, a plaintiff must prove clearly and positively that both parties were mistaken regarding the buildability of the property. Lusardo v. Broadview Sav. And Loan (March 14, 1991), Cuyahoga App. No. 58147, unreported, 1991 WL 34856. Appellee failed to prove that the lot was unbuildable. Appellee submits that the issue of the mine and its existence was the major focus of the trial. He cites this court to testimony regarding mine seepage, coal cropline failure and subsistence cave-ins. Appellee's Brief pg. 9-10 (citing to Transcript page 105) and a phrase from appellee's Complaint. Appellee cites the following passage of transcript to attempt to establish that appellee proved the lot was unbuildable: BY ATTORNEY HILLYER TO MR. LARKIN: Q You don't know what mine seepage is? A No, sir. Tell me about it. Q Do you know what crop line failure is? A No, sir. Q Do you know what subsistence cave-ins are? A No, sir. Transcript at 105. We cannot agree that the exchange between appellee's attorney and Mr. Larkin presents evidence that mine seepage, coal cropline failure and subsistence cave-ins effects Lot #3. Further, we find no evidence to support that any of these issues effect the buildability of the lot. In fact, Mr. Patel testified that he was never told that he could not build on the site. Tr. 79-80. We find that, even if the issue of mutual mistake was properly introduced and litigated before the court, no competent, credible evidence of mutual mistake by the parties was introduced. Specifically, we find no competent, credible evidence that the intention of the party was frustrated by the existence of mines under Lots #1 and #2. Mr. Patel purchased the property with the intention of building a home on the site. No competent, credible evidence was presented that Mr. Patel could not build his home on the site. Notwithstanding our holding assignment of error I, Appellant's second assignment of error is sustained.
 III AND CROSS ASSIGNMENT OF ERROR I
These two assignments of error allege that the trial court erred in awarding damages when it rescinded the contract under the theory of mutual mistake. Since we have found that the trial court erred in rescinding the contract on the ground of mutual mistake, we find these issues moot.
 IV
In his fourth assignment of error, Mr. Larkin, the seller under the terms of the contract in question, contends that the trial court erred in failing to order specific performance of the contract. Mr. Larkin claims that "if a contract for the purchase and conveyance of land is in all respects fair and free from ambiguity, and its enforcement as against the purchaser will vest in him a marketable title, the court has no legal discretion to refuse its enforcement. Appellant's Merit Brief (quoting City of Tiffin v. Shawhan (1885), 43 Ohio St. 178, paragraph 2 of syllabus). Appellant argues that evidence at trial demonstrated that the contract was not ambiguous and enforcement of the contract as against Mr. Patel will vest in Mr. Patel a marketable title to the lot. Therefore, appellant concludes that the court has no legal discretion to refuse to specifically enforce the contract. We find this assignment of error to be premature. In the case sub judice, the trial court never reached the merits of appellant's counterclaim for breach of contract since it rescinded the contract under the doctrine of mutual mistake. As addressed in Assignment of Error I, we have found that the trial court abused its discretion when it rescinded the contract for the sale/purchase of lot #3 under the mutual mistake doctrine. On remand, the trial court must now reach the merits of appellant's counterclaim for breach of contract. Should the trial court, on remand, enter judgment for Mr. Larkin on his counterclaim, the trial court then will have to determine the appropriate remedy. In other words, the trial court must then determine if specific performance and an award of prejudgment interest is appropriate under the circumstances of this case and in accord with equitable principals. Whether specific performance is the proper remedy for a seller of real property, must be determined on a case-by-case basis. "The duty of a court of equity to decree specific performance of a contract to convey real estate cannot be determined by any fixed rule, but depends upon the peculiar facts and equitable considerations of each case, and rests in the sound discretion of the court. . . ." City of Tiffin, supra. at syllabus para. 1; See also Sandusky Properties v. Avini (1984), 15 Ohio St.3d 273,473 N.E.2d 798. This court has dealt with the issue of the availability of specific performance to sellers of real property in George v. C.V. Perry Co. (May 1, 1989), Morrow App. No. CA-696, unreported, 1989 WL 47898 [hereinafter George]. When dealing with real property contracts, specific performance is generally only available to the vendee [purchaser] because it is the only adequate remedy for obtaining the real property. However, there are cases in which the equitable remedy has been available to vendors [sellers]. Ruhlen v. Columbus First Realty Co. (May 17, 1985), Hardin App. No. 6-93-13, unreported. . . . [T]he granting of specific performance is determined on a case-by-case basis.
Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by the principals of equity, on full consideration of the circumstances of each particular case. George, supra. Since the issue of damages, including specific performance, is dependent upon the trial court's disposition of appellant's counterclaim on remand, we find appellant's assignment of error IV is not ripe for review. Based upon the above, we sustain assignments of error I and II, find assignment of error III and cross-assignment of error I moot and find assignment of error IV not ripe for review. Therefore, we reverse and remand this matter to the trial court for the court to make conclusions of law and judgment consistent with this opinion, and consistent with the testimony presented during the trial and the trial court's previous findings of fact.
For the foregoing reasons, the Judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby reversed and remanded for proceedings consistent with this opinion.
By EDWARDS, J. GWIN, P.J. and FARMER, J. concurs.