OPINION
In this accelerated calendar case, submitted on the record and the briefs of the parties, appellant, the Estate of Jonathan Daniel Kaschalk, Deceased, appeals from the judgment of the Geauga County Court of Common Pleas, Probate Division, entered on July 3, 2000. After a hearing, the trial court granted a motion filed by appellees, American States Insurance ("A.S.I.") and Ronald Brehm, which sought the specific performance of the terms of a settlement agreement they had entered into with appellant. The following facts are relevant to a determination of this appeal.
This case arose out of a tragic accident that occurred on January 13, 1999. Jonathan Daniel Kaschalk, a six-year old boy, was with his father, apparently leaving Mr. Kaschalk's place of employment. According to a witness, as the boy approached the parking lot, he began running towards his father's truck. As the boy was passing a pick-up truck that was parked on his left, the truck exited its spot, turning ninety degrees to its right and running the boy over, causing his death. The truck was driven by Ronald Brehm, who was insured by A.S.I. Mr. Brehm was not charged by the police with any offense as a result of the accident. As the case was never litigated, Mr. Brehm's culpability, if any, has never been determined by a trier of fact.
Although Mr. Kaschalk did consult with an attorney at least once, he took it upon himself to administer the estate of his son, and personally negotiated a settlement with A.S.I. Negotiations began by April 1999, and continued over a period of months. They were conducted by telephone and by letters. The limit of the applicable insurance policy was $300,000. Although Mr. Kaschalk claims he was never told the applicable policy limit, his first request was for payment of $100,000 each to himself, his wife, and his surviving child, or $300,000. A.S.I.'s first offer of settlement was for $50,000 cash and a five-year annuity at $15,000 per year ($125,000), which was rejected. A.S.I. based its negotiating position on the police investigation's conclusion that Mr. Brehm was not at fault in the accident. A second offer was made, which was also rejected. The third offer, which was accepted, consisted of $110,000 cash, $23,000 for medical and funeral expenses, and a four-year annuity at $10,000 per year ($173,000).
On September 24, 1999, Mr. Kaschalk filed an application for authority to administer the estate and an application for approval of the wrongful death settlement in the Geauga County Common Pleas Court, Probate Division. After a hearing in probate court on November 2, 1999, Mr. Kaschalk was approved and appointed as administrator of the estate. In a separate entry on the same day, the court approved the wrongful death settlement. The court noted in this entry that "[p]arents have indicated they have consulted with counsel prior to entering into this settlement. Parents put value on closure."
On November 11, 1999, a letter, a check for $133,000, and a document, the Settlement Agreement and Release, were sent to Mr. Kaschalk. The letter confirmed the parties' agreement and requested that Mr. Kaschalk sign and return the release prior to depositing the settlement check. Mr. Kaschalk deposited the check but declined to sign the release. Mr. Kaschalk subsequently claimed he did not know, nor was he told, he would have to sign a release as a condition for accepting the settlement. He claimed he did not understand the release. Conversely, he claimed he understood the release to say that he, his wife, his child, and the decedent's grandparents would all be barred from filing a lawsuit, which he claimed was not his understanding when negotiating the settlement.
On March 15, 2000, appellees filed a motion requesting specific performance of the settlement agreement. A hearing on the matter was conducted on June 27, 2000. The trial court entered judgment granting the motion on July 3, 2000. The court specifically found that Mr. Kaschalk had negotiated the settlement with A.S.I. The court found Mr. Kaschalk had obtained approval of the settlement from the court as required by statute. The court found the settlement agreement and the release that A.S.I. subsequently forwarded to Mr. Kaschalk were consistent with the terms of the settlement negotiated by the parties and approved by the court. The court also found that A.S.I. had tendered full payment according to its obligation. The court found there was no fraud, no undue influence, nor a mistake that would justify nullification of the contract. From this judgment, appellant timely filed its notice of appeal, assigning the following error:
 "The Trial Court erred to the prejudice of the Plaintiff-Appellant in ruling in favor of Defendant's Motion for Specific Performance to Enforce the Compromise Agreement."
 "Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case." Sandusky Properties v. Aveni (1984), 15 Ohio St.3d 273, 275, citing Spengler v. Sonnenberg
(1913), 88 Ohio St. 192, 203.
"The standard of review in a case such as this is whether the trial court, sitting as a court of equity, abused its discretion." SanduskyProperties at 275. The term "abuse of discretion" has been defined by the Supreme Court of Ohio as a decision which is "unreasonable, arbitrary, or unconscionable." Dayton ex rel. Scandrick v. McGee
(1981), 67 Ohio St.2d 356, 359.
Appellant contends that the trial court erred by granting appellees' motion for specific performance. Appellant's argument is that it is entitled to a cancellation or rescission of the contract obligating it to sign the release. Thus, on appeal, appellant does not argue the trial court abused its discretion in granting specific performance to appellee. Rather, appellant argues it was entitled to rescission of the contract which, in effect, is the opposite of specific performance.
The law regarding rescission of releases was set forth by the Supreme Court of Ohio in Sloan v. Standard Oil Co. (1964), 177 Ohio St. 149, wherein the court stated:
 "A release may be avoided where the releasor can establish by clear and convincing evidence that it was executed by mutual mistake, as between himself and the releasee, of a past or present fact material to the release, as where there was a mutual mistake as to the existence of any injury of the releasor, unless it appears further that the parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished." Id. at paragraph one of syllabus.
Thus, in order to have a release avoided, the releasor must not only establish by clear and convincing evidence that there was a mutual mistake regarding a material fact to the release, the releasor must also establish that it was not the intent of the parties to release claims for all injuries. Hardy-Shafer v. Marshall (Mar. 7, 2001), Summit App. No. 19979, unreported, 2001 Ohio App. LEXIS 821 at 6. Appellant fails to establish either that there was a mutual mistake, or that it was not the intent of the parties to resolve all claims between them.
In addressing the equitable remedy of reformation of a contract, which in terms of the applicable legal principles is analogous to rescission, this court stated: "[t]he burden is on the party seeking reformation to establish by clear and convincing evidence that both parties weremistaken as to [a material fact]." (Emphasis added.) Zwaryz v. Wiley
(Aug. 20, 1999), Ashtabula App. No. 98-A-0073, unreported, at 5, citingMason v. Swartz (1991), 76 Ohio App.3d 43, 50. A mutual mistake is one which, by definition, is made by both parties with respect to the same fact. Appellant points to a number of "mistakes" it believes it made, but none which were mutual. For example, appellant claims that it did not realize that by reaching a settlement with A.S.I., it would be precluded from suing Ronald Brehm, and A.S.I. as Brehm's insurer, over this tragic event in the future. However, appellant does not set forth any facts establishing by clear and convincing evidence that A.S.I. suffered the same misapprehension. Appellant fails to establish that the trial court abused its discretion in reaching the conclusion there was no mutual mistake.
Appellant also fails to establish it was not the intent of the parties to permanently resolve appellant's claim against Ronald Brehm and A.S.I. as Brehm's insurer. In Sloan, the Supreme Court of Ohio set forth seven factors for a court to consider in trying to determine the intent of the parties at the time a release was executed. Sloan at 153. They are as follows:
 "[1] The absence of bargaining and negotiating leading to settlement; [2] the releasee is clearly liable; [3] absence of discussion concerning personal injuries; [4] the contention that the injuries were in fact unknown at the time the release was executed is reasonable; [5] an inadequate amount of consideration received compared with the risk of the existence of unknown injuries * * *; [6] haste by the releasee in securing the release * * *; [7] and the terms of the release exclude the injuries alleged * * *." Id.
First, it is clear there was bargaining and negotiation prior to the settlement. Second, the liability of Mr. Brehm, and thus of A.S.I., was neither clear nor established. The injuries to the decedent were apparent and known. There were no unknown injuries. Also, there was no apparent haste in attempting to secure the release. In fact, the settlement had to be approved by a probate court before the release could be signed. Finally, the release addressed all the injuries. In short, all seven of the factors relevant to the intent of the parties at the time the release was tendered indicate the intent to release. All the factors weigh in favor of specific performance, and against rescission. Consequently, there is no basis to conclude the trial court abused its discretion in granting specific performance to appellees.
Appellant's assignment of error is without merit. The judgment of the trial court is affirmed.
 _____________________________________ PRESIDING JUDGE WILLIAM M. O'NEILL
CHRISTLEY, J., NADER, J., concur.