DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the June 3, 2003 judgment of the Wood County Court of Common Pleas which granted partial summary judgment to appellees, Suzanne and Stanley Harris. Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellants, Nikki Isbell, Garry Isbell, and Debra Isbell, assert the following single assignment of error on appeal:
 {¶ 2} "The trial court committed prejudicial error by granting summary judgment against appellants on the equitable concept of specific performance."
 {¶ 3} Appellees filed their complaint against Brian J. Reiff (Suzanne Harris's son), and Nikki, Garry, and Debra Isbell to either quiet title, compel a sale in partition, or recover damages for breach of contract. This case arose out of an oral contract between appellee Suzanne Harris, Reiff, Nikki Isbell, and Garry Isbell.
 {¶ 4} Suzanne Harris, along with her husband, Stanley Harris, who has a dower interest, sought to be declared the sole owners of the property and quite title to certain property. Suzanne Harris also sought to recover $20,000 plus interest in damages resulting from the breach of the above-mentioned contract. Alternatively, appellants sought to compel a sale in partition since Reiff and Nikki Isbell own an undivided one-half interest in the property.
 {¶ 5} Thereafter, the Harrises filed a motion for partial summary judgment. Attached to the motion was the affidavit of Suzanne Harris. In that affidavit, she attested to the following facts.
 {¶ 6} Around July 24, 2001, Harris agreed to loan Reiff and Nikki Isbell $20,000 for the purchase of a home. Garry Isbell, Nikki Isbell's father, also made the same oral agreement. While the Isbells contend in their motion in opposition to the Harrises' motion for summary judgment that the initial loan was for $16,300, the Isbells admitted in their answer that the loan was for $20,000.
 {¶ 7} Both Suzanne Harris and Garry Isbell agreed to execute quit claim deeds in favor of Reiff and Nikki Isbell upon repayment of the loans. The parties intended that Reiff and Nikki Isbell would immediately refinance the loan and repay the loans to Garry Isbell and Suzanne Harris. All four parties purchased a home together on July 24, 2001.
 {¶ 8} Reiff and Nikki Isbell obtained a mortgage from American General Mortgage Company. The Isbells admit in their answer that they repaid Garry Isbell's loan and that on September 25, 2001, he signed a quitclaim deed transferring his rights in the home to Reiff, Nikki Isbell, and Suzanne Harris.
 {¶ 9} Suzanne Harris further attested that in the fall of 2001, Reiff and Nikki Isbell expressed a desire to refinance the home in order to make certain improvements. In consideration for Suzanne Harris' consent to the refinancing loan, Reiff, Nikki Isbell, and Garry Isbell orally agreed to refinance the property by December 31, 2001. If they failed to do so, they agreed that all of their names would be removed from the property and Suzanne Harris would become the sole owner of the property. The Isbells admitted in their answer to the complaint that they entered into a written agreement on November 30, 2001 affirming the oral agreement.
 {¶ 10} Suzanne Harris also attested that Reiff and Nikki Isbell failed to refinance the property by the deadline. Reiff executed a quitclaim deed in Suzanne Harris' favor on July 22, 2002, but the Isbells refused to execute a quitclaim deed, refused to repay the loan, and refused to permit Suzanne Harris to take possession of the home.
 {¶ 11} Garry, Debra, and Nikki Isbell opposed the motion for summary judgment and presented the following affidavits. Debra Isbell attested that Suzanne Harris and Garry and Debra Isbell agreed to loan Reiff and Nikki Isbell $16,300 to help Reiff and Nikki Isbell purchase a home for $32,500. Because the loaned funds were insufficient to enable Reiff and Nikki Isbell to make the home habitable, the parties agreed that they would obtain a $37,000 loan against the house in order to make repairs. From the proceeds of the loan, Garry Isbell was reimbursed $20,000. Garry Isbell used the entire $20,000 he received to make improvements to the home. Because there was still insufficient funds to repair the house, the loan was refinanced in November 2001 to increase the face amount to $48,060, giving them an additional $11,000 to repair the home after paying off the first loan. Suzanne Harris refused to sign this note, but she did sign the mortgage. Debra Isbell further attested that Suzanne Harris only signed the mortgage after the parties signed the November 30, 2001 agreement.
 {¶ 12} Reiff, Nikki Isbell, and Garry Isbell attempted to obtain a second $20,000 mortgage on the property in order to repay Suzanne Harris' loan, but they were unable to do so because Reiff was delinquent on a loan for a vehicle in the amount of $9,000, which resulted in a judgment lien on the home. Suzanne Harris had led Debra Isbell to believe that Harris was making payments of the vehicle loan, but she was not. Debra Isbell believed that Suzanne Harris refused to cooperate with any of the financing transactions that would enable her to be repaid. Debra Isbell also attested that she and Garry Isbell have paid the real estate taxes, mortgage payments, and utilities on the property.
 {¶ 13} In their motion in opposition, the Isbells did not contend that there were genuine issues of material fact in this case. Rather, they contended that the court should not grant summary judgment in favor of the Harrises because the Isbells are not in breach of the contract; that it would be unconscionable to quiet title in favor of the Harrises when Suzanne Harris' failure to pay the vehicle loan prevented the Isbells from obtaining refinancing so that they could repay the loan owed to her; that the Harrises would be unjustly enriched by such a judgment due to the fact that significant improvements have been made to the house; and that the quiet title remedy is not available for one who claims an entire estate but is not in possession of the property.
 {¶ 14} On April 11, 2003, the trial court granted partial summary judgment to the Harrises. The court found that they were entitled to specific performance of the contract and that there was no right to restitution or a claim of unjust enrichment by the Isbells. In a nunc pro tunc entry dated June 3, 2003, the court also found that there was no just reason for delaying an immediate appeal of the grant of summary judgment.
 {¶ 15} On appeal, the Isbells assert in their sole assignment of error that the trial court erred in granting partial summary judgment to the Harrises.
 {¶ 16} An appellate court reviews summary judgment de novo.Advanced Analytics Lab., Inc. v. Kegler, Brown, Hill Ritter,148 Ohio App.3d 440, 2002-Ohio-3328, at ¶ 33. Therefore, we must determine if the requirements of Civ.R. 56(C) have been met. That rule provides that summary judgment is appropriate if:
 {¶ 17} "* * * there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"
 {¶ 18} Because specific performance is an equitable remedy, the Isbells argue that it cannot be awarded unless the contract was fair and equitable. The Isbells contend that the contract was not fair or equitable because they would lose the $20,000 investment they made in improving the property and would not fulfill the purpose of the contract which was to provide Nikki Isbell with a home. The Harrises argue that the Isbells did not raise this issue in the trial court and, therefore, have waived the issue for purposes of appeal.
 {¶ 19} We agree with the Harrises that since the Isbells did not argue in the trial court that the contract in this case was unfair or inequitable, they have waived the issue for appeal. Schade v. CarnegieBody Co. (1982), 70 Ohio St.2d 207, paragraph one of the syllabus, andState ex rel. Zollner v. Indus. Comm. of Ohio (1993), 66 Ohio St.3d 276,278.
 {¶ 20} However, the Isbells did argue that the Harrises would be unjustly enriched by an award of specific performance due to the fact that the Isbells have made significant repairs to the home. Therefore, this issue has been preserved for consideration on appeal. The Isbells' second argument, that equity requires that they be credited with the contributions they made to improve and maintain the property, will be considered in conjunction with the first argument.
 {¶ 21} Generally, unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another. University Hospitals of Cleveland, Inc. v. Lynch,96 Ohio St.3d 118, 2002-Ohio-3748, at ¶ 60, and Pruett v. Flavell, 3rd Dist. App. No. 14-01-14, at 8, 2001-Ohio-2283, citing Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183. Because there was a valid, enforceable contract in this case, this doctrine is not applicable. U.S. Health Practices, Inc. v. Blake (Mar. 22, 2001), 10th Dist. App. No. 00AP-1002, at 4-5.
 {¶ 22} Rather, the substance of the Isbells' argument is that the court should not have awarded specific performance in this case. The Isbells argue that this was inequitable because that award would transfer title of the house to the Harrises after the Isbells have made significant improvements to the property and maintained the property.
 {¶ 23} We agree with the trial court that the Isbells, had they filed such a claim, were not entitled to restitution for the benefits they conferred upon the Harrises since the Harrises did not request that the Isbells improve or maintain the home. Wendover Rd. Property Owners Assn. v. Kornicks (1985), 28 Ohio App.3d 101, 104.
 {¶ 24} Generally, specific performance can be awarded if there was a valid enforceable contract that was breached. Tiffin v. Shawhan
(1885), 43 Ohio St. 178, paragraph two of the syllabus. The court's goal is to carry out what the parties had intended to do under the contract.Sandusky Properties v. Aveni (1984), 15 Ohio St.3d 273, 276, quotingHellkamp v. Boiman (1970), 25 Ohio App.2d 117, 122. If the terms of the contract are unambiguous, the court must enforce the intent of the parties as expressed by the contract. Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 246.
 {¶ 25} The following factors are the general prerequisites to the award of specific performance: "The contract must be concluded, certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; and finally, it must be capable of specific execution through a decree of the court." Roth v. Habansky, 8th Dist. App. No. 82027, 2003-Ohio-5378, at ¶ 16.
 {¶ 26} However, in an arms length transaction, the parties are free to make whatever contract they desire so long as there is no fraud, duress, overreaching, or undue influence involved. A contract does not have to be fair or equitable to be enforceable. Walther v. Walther
(1995), 102 Ohio App.3d 378, 383, and Gunsorek v. Pingue (1999),135 Ohio App.3d 695, 701. Nonetheless, "* * * specific performance will not be granted where it will cause unreasonable hardship, loss or injustice to the party in breach." Roth v. Habansky, supra, at ¶ 19 citing Sternberg v. Bd. of Trustees of Kent State Univ. (1974),37 Ohio St.2d 115, 118, and Huntington v. Rogers (1859), 9 Ohio St. 511,516. The court has the discretion, if the circumstances require, to modify the award of specific performance of a contract in order to make it equitable. Quarto Mining Co. v. Litman (1975), 42 Ohio St.2d 73, 87, certiorari denied (1975), 423 U.S. 866.
 {¶ 27} Thus, the trial court, after considering the circumstances of the particular case, has the discretion to determine whether specific performance is the appropriate remedy. Tiffin v. Shawhan (1885),43 Ohio St. 178, paragraph one of the syllabus, and Spengler v.Sonnenberg (1913), 88 Ohio St. 192, 203. On appeal, the trial court's decision will not be disturbed unless the trial court abused its discretion. Sandusky Properties v. Aveni (1984), 15 Ohio St.3d 273, 274. The term "abuse of discretion" has been defined as a decision which is arbitrary, unreasonable, or unconscionable. Id.
 {¶ 28} The contract in this case was unambiguous. It clearly reveals that Suzanne Harris' sole intent was to recoup her initial $20,000 investment. The parties made an agreement which protected Suzanne Harris' investment while enabling Reiff and Nikki Isbell to obtain another loan. The fact that the Isbells made a poor bargain cannot be rectified by the courts. We find that the trial court did not abuse its discretion by awarding the Harrises specific performance in this case.
 {¶ 29} The Isbells also argue that the Harrises were not entitled to relief since they did not come into equity with clean hands. They contend that Suzanne Harris allowed a loan she agreed to pay to become delinquent and a lien upon the house, thus preventing Reiff and Nikki Isbell from being able to obtain a refinancing loan without Suzanne Harris' participation.
 {¶ 30} We find no merit to this argument either. Even if the evidence that Suzanne Harris had stated that she was going to pay off Brian Reiff's vehicle loan is accepted as true, there was no legal obligation for her to do so. Furthermore, there is no basis for imposing such a burden on her in order to protect her investment.
 {¶ 31} The Isbells' sole assignment of error is not well-taken.
 {¶ 32} Having found that the trial court did not commit error prejudicial to the Isbells, the judgment of the Wood Court of Common Pleas is affirmed. Pursuant to App.R. 24, the Isbells are hereby ordered to pay the court costs incurred on appeal.
Judgment Affirmed.
Peter M. Handwork, P.J., Richard W. Knepper, J., Mark L. Pietrykowski, J., concur.