DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Blue View Corporation, appeals from a final judgment of foreclosure in the Summit County Court of Common Pleas, challenging the trial court's earlier determination that the mortgage lien now held by Appellee, WM Specialty Mortgage LLC, had first priority over the mortgage lien of Blue View. We reverse and remand because this issue was not properly decided on summary judgment.
 {¶ 2} Blue View filed this foreclosure action against Charles and Diane Rhynes, contending that they were in default on their mortgage. At one time, the Rhyneses held a first mortgage on their property with Ohio Savings and a second mortgage with Bank One. The mortgage with Bank One, which had been recorded on February 28, 2000, was assigned to Blue View and the assignment was recorded on August 31, 2004.
 {¶ 3} Blue View named several other defendants including Ameriquest Mortgage Company ("Ameriquest"), contending that Ameriquest may or may not have an interest in the real property by virtue of a mortgage recorded on September 1, 2004.
 {¶ 4} Ameriquest answered and later filed a motion for summary judgment.[1] Ameriquest asserted that, although it did not technically have a lien priority over Blue View, it should have first lien priority under equitable principles. It was not disputed that Charles Rhynes had used most of the proceeds from the Ameriquest loan to pay off the first mortgage with Ohio Savings. Ameriquest maintained that, when it executed the mortgage note on the Rhynes property, because it was unaware that there still was an outstanding second mortgage, it failed to secure its position as first lien holder. Ameriquest asserted that it was entitled to first lien priority under either the doctrine of equitable estoppel or equitable subrogation.
 {¶ 5} Although Ameriquest implicitly conceded that Blue View's mortgage was recorded first and was otherwise entitled to priority under R.C. 5301.23(A), it argued that it would be inequitable to allow Blue View to have first lien priority in this situation. Specifically, Ameriquest maintained that it had always intended to have first lien priority, that the proceeds from its loan had been used to pay off the prior first mortgage on the property, and that Ameriquest had been led to believe that there were no other mortgage liens on the property. Ameriquest based its mistaken belief on a title search and information provided by Bank One regarding the status of its mortgage.
 {¶ 6} Prior to the execution of the Ameriquest mortgage note, as part of the title search on the Rhynes property, the title agent had discovered the lien by Bank One. The title agent contacted Bank One to ascertain the status of its lien. Through a letter dated August 18, 2004, Bank One informed the title agent that the lien had been "charged off" on April 28, 2004 and that it had a zero balance as of August 16, 2004. Ameriquest apparently concluded from this information that the Bank One lien had been extinguished and that there were no other mortgage liens on the Rhynes property.
 {¶ 7} At the time Bank One sent the letter to the title agent, it had already assigned the Rhynes loan to Blue View, but it did not disclose that information in the letter. Moreover, the assignment had been executed on July 6, 2004 but was not recorded until August 31, 2004, after the title agent had done the title search. According to Ameriquest, as a result of misinformation from Bank One and Blue View's failure to timely record the assignment, Ameriquest had lost its intended status as first mortgage holder to Blue View, who had "leap-frogged" from the status of second mortgage holder into the first lien position.
 {¶ 8} Blue View responded in opposition to Ameriquest's motion and also filed a cross-motion for summary judgment, contending that Ameriquest was not entitled to equitable relief because its reliance on the information from Bank One had been unreasonable. Blue View did not dispute the basic relevant facts, but sharply disputed whether Ameriquest had been reasonable in relying solely on the information from the Bank One letter to conclude that there were no other mortgage liens on the Rhynes property. Blue View asserted that a reasonable lender would have done another title search, which would have revealed Blue View's lien, and/or asked Bank One for a written release of its lien.
 {¶ 9} Following consideration of both motions, the trial court granted Ameriquest summary judgment and denied the motion of Blue View. Shortly thereafter, the trial court issued the final decree of foreclosure.
 {¶ 10} Blue View appeals and raises two assignments of error, both of which pertain to the trial court's summary determination that Ameriquest had first lien priority.
 ASSIGNMENT OF ERROR I
"The trial court erred when it granted summary judgment based on equitable subrogation in favor of the Defendant/Appellee."
 ASSIGNMENT OF ERROR II
"The trial court erred when it denied the Plaintiff/Appellant's motion for summary judgment as to priority."
 {¶ 11} Blue View contends that the trial court erred in granting the summary judgment motion of Ameriquest and in denying its cross-motion for summary judgment. Ameriquest contended that it was entitled to first lien priority under either the doctrine of equitable estoppel or equitable subrogation. The trial court granted summary judgment to Ameriquest based on its argument that it had first lien priority pursuant to the doctrine of equitable subrogation.
 {¶ 12} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex. rel.Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589.
 {¶ 13} "Doubts must be resolved in favor of the nonmoving party." Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 686, quoting Davis v. Loopco Industries, Inc. (1993),66 Ohio St.3d 64, 66. In ruling on a motion for summary judgment the trial court is not permitted to weigh the evidence or choose among reasonable inferences. Dupler v. Mansfield Journal
(1980), 64 Ohio St.2d 116, 121. Rather, the court must evaluate the evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. Id. Because summary judgment precludes a jury's consideration of the case, it should be granted with caution and used sparingly. Shawv. Central Oil Asphalt Corp. (1981), 5 Ohio App.3d 42, 44.
 {¶ 14} Equitable or legal subrogation arises by operation of law "when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." State v.Jones (1980), 61 Ohio St.2d 99, 102, quoting Federal Union LifeIns. Co. v. Deitsch (1934), 127 Ohio St. 505, 510. Although equitable subrogation arises "by operation of law," the doctrine is not typically invoked as a matter of law on summary judgment, as the right to equitable subrogation "depends upon the facts and circumstances of each particular case." See id., quoting CantonMorris Plan Bank v. Most (1932), 44 Ohio App. 180, 184. Equitable remedies are rarely asserted as a matter of law or a matter of right, but are left to the sound discretion of the trial court. See Fifth Third Bank v. Simpson (1999),134 Ohio App.3d 71, 73. The denial of equitable relief is reviewed for abuse of the trial court's discretion. Sandusky Properties v.Aveni (1984), 15 Ohio St.3d 273, 274-275. Claims for equitable relief typically require the trial court to balance the equities of the parties. River Terrace Condominium Assn. v. Lewis
(1986), 33 Ohio App.3d 52, 56. Such balancing of equities involves a weighing of the evidence, which is inappropriate on summary judgment. In fact, the many equitable subrogation cases upon which the parties base their arguments were not decided on summary judgment but were instead determined by the trier of fact and were reviewed for an abuse of discretion, as the equitable determination involved a weighing of competing equities. See, e.g., Jones, 61 Ohio St.2d 99; Leppo, Inc. v. Kiefer (Jan. 31, 2001), 9th Dist. Nos. 20097, 20105, at 4-5.
 {¶ 15} The parties disputed the applicability of this doctrine, and asked the court to decide the issue as a matter of law. Ameriquest asserted that the doctrine applied; Blue View contended that it did not. Their arguments clearly demonstrate, however, that there were genuine issues of material fact regarding the applicability of the doctrine of equitable estoppel to the facts of this case and the issue could not be decided as a matter of law.
 {¶ 16} Blue View asserted that Ameriquest could not invoke the doctrine of equitable estoppel because Ameriquest had been culpably negligent in failing to discover the Blue View lien on the Rhynes property. This court has held that the doctrine of equitable estoppel will not apply where the party seeking the remedy was guilty of culpable negligence or was in the best position to protect its own interest. Id., citing State v.Jones (Dec. 29, 1978), 9th Dist. No. 2738, at 10, and NationalCity Bank v. Forsyth (July 5, 1989), 9th Dist. No. 13992, at 4. According to Blue View, Ameriquest was culpably negligent in relying solely on the letter from Bank One and in failing to conduct another title search.
 {¶ 17} Although the basic facts in this case were not disputed, both parties sharply disputed whether Ameriquest had been reasonable in relying solely on the information in the Bank One letter or whether it should have done more searching. The parties also disputed whether Bank One had, in fact, misinformed the title agent and whether Blue View had deliberately delayed recording the assignment from Bank One in an effort to improve its lien position.
 {¶ 18} The trial court found that the negligence of Bank One in misinforming the title agent and the negligence of Blue View in failing to timely record the assignment were greater than the negligence of Ameriquest in failing to discover the Blue View mortgage. The trial court, in an apparent balancing of equities, found that Blue View was more culpable than Ameriquest and concluded that to allow it to "leap frog" into first lien position would be "unconscionable." Such balancing of equities and factual findings by the trial court were inappropriate under Civ.R. 56.
 {¶ 19} "[I]ssues of negligence are not usually susceptible to summary adjudication." Benjamin v. Deffet Rentals (1981),66 Ohio St.2d 86, 88. Summary judgment is precluded where conduct must be evaluated as negligent or non-negligent, even when the conduct is undisputed, as it was here. Whiteleather v. Yosowitz
(1983), 10 Ohio App.3d 272, 274. Whether conduct or reliance was or was not "reasonable" under the circumstances is necessarily a question of fact inappropriate for consideration on summary judgment. See Helmick v. Cincinnati Word Processing, Inc.
(1989), 45 Ohio St.3d 131, 136-137; New Towne L.P. v. Pier 1Imports (U.S.), Inc. (1996), 113 Ohio App.3d 104, 108, fn.2.
 {¶ 20} The issue of whether equitable subrogation was justified in this case was not properly decided on summary judgment because the respective culpability of the parties was disputed. Therefore, the trial court erred in deciding this issue on summary judgment, as it could not be decided as a matter of law.
 {¶ 21} Although the trial court erred in granting summary judgment on the basis of equitable subrogation, we must affirm summary judgment if Ameriquest raised any grounds to support it.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. Ameriquest also asserted that it was entitled to summary judgment on the basis of equitable estoppel.
 {¶ 22} To establish its entitlement to first lien priority under the doctrine of equitable estoppel, Ameriquest was required to establish: (1) that Bank One/Blue View made a factual misrepresentation; (2) that it was misleading; (3) that it induced actual reliance which was reasonable and in good faith; and (4) that the reliance caused detriment to Ameriquest. Helmanv. EPL Prolong, Inc. (2000), 139 Ohio App.3d 231, 246. The doctrine of equitable estoppel would likewise involve the same disputed issues of whether Ameriquest had reasonably relied solely on the letter from Bank One and the one title search to conclude that there were no prior mortgage liens on the Rhynes property. Consequently, it would also have been improper to grant summary judgment on the basis of equitable estoppel.
 {¶ 23} Because there were genuine issues of material fact regarding the applicability of either the doctrine of equitable subrogation or equitable estoppel, the lien priorities in this foreclosure action were not properly decided on summary judgment. The trial court would have erred in granting summary judgment to either party. Consequently, the first assignment of error is sustained and the second assignment of error is overruled.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee, WM Specialty Mortgage LLC.
Whitmore, J., Boyle, J., concur.
[1] Shortly before the summary judgment motion was filed, Ameriquest assigned its interest to Appellee, WM Specialty Mortgage LLC.