[Cite as *PennyMac Loan Servs., L.L.C. v. Nespeca*, 2025-Ohio-5622.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

PENNYMAC LOAN SERVICES, LLC,

Plaintiff-Appellant,

v.

KAREN E. NESPECA AKA KAREN NESPECA et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0007**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CV 01460

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed and Remanded with order to Vacate.

---

*Atty. William L. Purtell*, Reisenfeld & Associates LLC, for Plaintiff-Appellant and

*Atty. Matthew C. Giannini* and *Atty. Jennifer Beck,* for Appellee/Third-Party Defendant, Italiano Holdings, LLC/Jonathan Italiano.

Dated:  December 17, 2025

**Robb, P.J.**

{¶1}   Plaintiff-Appellant PennyMac Loan Services, LLC (PennyMac) appeals the judgment of the Mahoning County Common Pleas Court on a motion for distribution of excess proceeds held with the clerk after the junior lienholder's foreclosure sale at which the property was purchased by Intervenor-Appellee Italiano Holdings, LLC (Italiano). PennyMac argues the trial court had no authority to decrease the amount owed from the third-party purchaser on the mortgage by limiting liability to the principal balance at the time of the default by the Nespecas (the debtors), with no interest or costs.  PennyMac points to prior final orders declaring the sale was subject to PennyMac's senior mortgage and protected by R.C. 2329.20.  In the alternative to this argument based on legal error, PennyMac argues the court's decision constituted an abuse of discretion.  For the following reasons, the trial court's December 18, 2024 order is reversed and remanded with instructions for the trial court to vacate and to order the clerk to release the remaining sale proceeds to PennyMac.

<u>STATEMENT OF THE CASE</u>

{¶2}   Karen Nespeca (the debtor) and her husband Rodney Nespeca (the co-debtor) owned 1334 Valley View Drive (the property).  On August 18, 2022, PennyMac, as the senior lienholder, filed a complaint against the debtors based on a note secured by a mortgage recorded June 27, 2012.  Count one of the complaint for recovery on the note explained the debtors owed $88,818.67 plus interest at 3.99% per annum from November 1, 2021, plus late fees, escrow advances, court costs, and other expenses. Count two for enforcement of the mortgage on the property asked for a declaration that PennyMac's mortgage was a valid first lien on the realty.

{¶3}   The complaint named as an additional defendant The Huntington National Bank (Huntington) due to its junior lienholder status, as disclosed in the judicial report. Huntington filed an answer and a cross-claim, stating the debtors were in default on a personal credit line secured by a mortgage recorded July 7, 2016.  The debtors owed Huntington $42,040.17 plus variable interest (listing various time periods with rates ranging from 6.46% to 9.46%) plus late charges and any advancements.

<u>Case No. 25 MA 0007</u>

{¶4}     The debtors did not answer or appear in the action.  On December 21, 2022, Huntington filed a motion for default judgment against the debtors, and the court set the motion for a hearing.

{¶5}     On January 31, 2023, a default judgment was entered.  The entry stated the judgment was "*upon the Complaint of the Plaintiff, PennyMac Loan Services, LLC*, the Answer and Crossclaim and Amended Answer and Crossclaim, the Motion for Default Judgment of the Defendant, The Huntington National Bank, and the evidence." (Emphasis added.) (And stating the defaulting debtors confessed "the allegations of the Complaint to be true").  In accordance, the court found the debtors owed Huntington $42,040.17 plus interest at the various requested rates from July 20, 2021.

{¶6}     While ordering foreclosure on Huntington's mortgage, the court pointed out it constituted a "second lien upon said premises, subject only to the lien of the Treasurer for real estate taxes and assessments and the mortgage of Plaintiff, PennyMac Loan Services, LLC" who "holds the first mortgage on the property" with **$88,818.67** due plus interest at a rate of 3.99% per annum from November 21, 2021 and advancements.

{¶7}     The court said PennyMac's "mortgage is a prior lien as defined in R.C. 2329.20" and "this decree does not affect said mortgage or the underlying obligation and that the property is to be sold subject to the mortgage of Plaintiff, PennyMac Loan Services, LLC."  Applying the cited statute, the property was ordered to be "advertised and sold at a minimum value of not less than two-thirds of the difference between the value of the premises as appraised and the amount remaining unpaid on the note and mortgage of Plaintiff, PennyMac Loan Services, LLC."  (1/31/23 Foreclosure J.E.).

{¶8}     The debtors were provided time to pay Huntington to avoid the foreclosure sale.  The debtors did not appeal or redeem.  Subsequently, various sale cancellations occurred.

{¶9}     The initial praecipe for order of sale filed by Huntington asked for an order directing the sheriff to appraise, advertise, and sell the premises "**subject to the mortgage lien of Plaintiff, PennyMac Loan Services, LLC pursuant to Ohio Revised Code Section 2329.20**."  (Emphasis original.) (2/22/23 Praecipe).  However, a motion to cancel the sale was filed after the April 2023 publication failed to contain notice of PennyMac's mortgage.

**{¶10}** A second motion asked to postpone the sale after a July 2023 advertisement again failed to contain this notice (despite the addition to the praecipe of a second bolded, capitalized, and asterisked statement about the property being sold subject to PennyMac's mortgage). (5/23/23 Praecipe).

**{¶11}** A subsequent motion to cancel was filed after the August 2023 advertisement incorrectly applied the statutory two-thirds figure in calculating the minimum bid. The motion pointed out, "the first mortgage holder exercised their right to have the property sold 'subject to' their mortgage and the starting bid is incorrect." (9/18/23 Mot.).[1]

**{¶12}** The final advertisement giving notice of the foreclosure sale expressly disclosed: "Property being sold subject to the mortgage of PennyMac Loan Services, LLC pursuant to Ohio Revised Code Section 2329.20." This ad also specified the minimum bid of $91,359.42 was two-thirds of the difference between the appraised value of $243,000 and the amount due on PennyMac's note and mortgage.

**{¶13}** At the resulting January 9, 2024 sheriff sale, Appellee Italiano Holdings LLC was the winning bidder at $164,800. The order of sale was returned by the sheriff and filed on January 29, 2024.

**{¶14}** On April 9, 2024, the court issued a "Judgment Entry Confirming Sale and Ordering Distribution of Sale Proceeds." On April 15, 2024, the court issued an "Amended Judgment Entry Confirming Sale and Ordering Distribution of Sale Proceeds" to correct the amount of real estate taxes due to the county from $0 to $1,673.06 (and reduced the remaining balance of sale proceeds accordingly).

**{¶15}** The confirmation order instructed the sheriff to convey the property by deed to the purchaser Italiano Holdings, LLC dba Italiano Properties "**subject to the first mortgage held by PennyMac Loan Services, LLC** [and] purchaser is hereby subrogated to all the rights of the lienholders in said premises as far as they may be paid herein, for the protection of its title. . ." (Emphasis original.) (4/9/24 J.E. and 4/25/25 J.E.).

---

[1] The sale cancellation motions named "Plaintiff PennyMac" as the movant but were filed by Huntington's attorney (and served on the attorney for PennyMac). Each praecipe for order of sale was filed by Huntington's attorney "for Defendant Huntington National Bank."

{¶16} In distributing some of the sale proceeds, the sheriff was ordered to pay Huntington $60,046.89 and then release Huntington's lien. The court made orders regarding other costs to pay, including $7,747.70 in court costs. Lastly, the court ordered the sheriff to pay "**To the Clerk of Court, the balance of the sale proceeds, in the amount of $94,555.65 to hold pending further Order of this court.**" (Emphasis original.) (4/15/24 Amended Order Confirming Sale, recorded 5/14/24).

{¶17} Just as the debtor did not appeal the foreclosure entry setting forth the amount the debtor owed to PennyMac plus interest, the debtor did not appeal the order confirming the sale, which reiterated the sale was subject to PennyMac's mortgage. No interested party filed a statutory motion to set aside the sale. *See* R.C. 2329.27(B) (also stating the order confirming the sale deems the notice proper or non-prejudicial and no further motion to set aside is permissible).

{¶18} On April 29, 2024, the sheriff placed the remaining funds with the clerk (as instructed by the confirmation and distribution order). The sheriff's deed was recorded the same day. (7/11/24 Italiano's Proposed Findings and Conclusions) (and stating the property was sold subject to PennyMac's mortgage); *see also* R.C. 2329.37 (effect of deed as prima facie evidence of legality and regularity of sale). A writ of possession was issued in favor of Italiano Holdings, LLC on May 7, 2024.

{¶19} Also on May 7, 2024, an attorney entered an appearance for debtor Karen Nespeca (whose co-debtor husband had died). The next day, the debtor filed a motion for distribution of the excess sale proceeds, asking the court to order the clerk to pay her the remaining $94,555.65 held by the clerk, citing R.C. 2329.44(B)(1) (clerk of court shall pay the balance to the judgment debtor on demand).

{¶20} The debtor's motion said the "Plaintiff" secured the foreclosure decree and executed on the foreclosure judgment via a sheriff's sale followed by an order confirming the sale and distributing proceeds (suggesting to the court that the Plaintiff-PennyMac was already paid without recognizing the foreclosure sale was on behalf of Huntington). The motion also said, "there remain no subordinate lien holders" (without mentioning the sale was subject to PennyMac's senior mortgage as ordered by the court).

**{¶21}** On May 14, 2024, a magistrate's order was filed setting a hearing on the debtor's motion. The parties were ordered to appear on June 11, 2024 via phone conference to be initiated by PennyMac.

**{¶22}** However, on May 22, 2024, the trial judge issued an order granting the debtor's motion for distribution of excess funds in the full amount held by the clerk. This entry said the April 15, 2024 order was amended to reflect the distribution.

**{¶23}** PennyMac immediately filed a motion to vacate this distribution to the debtor, citing Civ.R. 60(B) and pointing out the property was sold subject to PennyMac's first mortgage. It explained PennyMac did not initially proceed with foreclosure along with Huntington because PennyMac's mortgage was on hold for loss mitigation in favor of the debtor.[2] It was urged the distribution to the debtor was not equitable while the application of the excess proceeds to PennyMac's mortgage "will permit the bidders to more easily satisfy" their obligation on the mortgage. The motion asked the court to continue holding the funds pending further proceedings, including PennyMac's motion for judgment and decree of foreclosure. (5/24/24 Mot. to Vacate).

**{¶24}** On May 29, 2024, the trial court granted PennyMac's motion to vacate. The court ordered the clerk to continue holding the funds pending a ruling on anticipated dispositive motions to be filed by PennyMac.

**{¶25}** On June 3, 2024, the debtor filed a motion to "reconsider" seeking to vacate the May 29 judgment. The debtor argued she was entitled to the excess proceeds under R.C. 2923.44. She opined PennyMac should collect the entire amount outstanding on its non-foreclosed first mortgage secured by the property from the new owner of the property (Italiano) or foreclose on Italiano's newly purchased property.

**{¶26}** In response, PennyMac pointed out the statute relied on by the debtor (R.C. 2923.44) deals with the duty of the clerk, not the discretion of the trial court. PennyMac set forth law explaining it was a well-settled rule of practice to allow lienholders (even defaulting ones) to make a claim to funds being held after a foreclosure sale rather than to allow the funds to be paid to the debtor. (6/12/24 Resp. to Recon.).

---

[2] PennyMac attempted to re-serve the summons and complaint on the debtor Karen Nespeca by various methods but could not locate her. *See, e.g.,* (7/5/24 Req. for Serv.); (10/23/24 Aff. of Serv. by Pub.); (11/5/24 Order to Serve by Pub.).

Case No. 25 MA 0007

{¶27} On June 12, 2024, "Jonathan Italiano, President of Italiano Holdings, LLC dba Italiano Properties" moved to join as a party, stating this entity purchased the real estate and wished to participate in the decision on whether the sale proceeds should be applied to the outstanding mortgage. Italiano's motion acknowledged the purchase was "subject to an outstanding mortgage to PennyMac Loan Services, LLC in the approximate amount of $95.000" (suggesting the amount due on the mortgage was the same as the amount of the excess proceeds).

{¶28} Jonathan Italiano, President of Italiano Holdings, LLC dba Italiano Properties then filed a memorandum in support of PennyMac's position. (7/5/24 Memo). An amended memorandum was filed on July 11, 2024, stating a draft was inadvertently filed rather than the final version. A second amended memorandum was filed on July 23, 2024, as the prior filings cited the wrong property (listing the address number and street name for a different property).

{¶29} Italiano argued a debtor-mortgagor's right to excess proceeds is secondary to the legitimate demands by a creditor-mortgagee with a lien on the foreclosed property. Italiano emphasized PennyMac, as the mortgagee who initiated the foreclosure action, had an even stronger argument than those presented by lienholders in cases who filed claims after the foreclosure sale and were permitted to share in the distribution and thwart requests for proceeds by debtors. Although it was claimed Italiano Holdings was unaware of the outstanding mortgage when bidding, it was not argued this was due to a sale notice issue and it was acknowledged PennyMac remained entitled to enforce its mortgage rights on the property. (7/23/24 Memo.).

{¶30} Italiano also filed proposed findings of fact and conclusions of law, which recognized PennyMac was due **$88,818.67** plus interest subject to taxes, interest, and penalties, and argued PennyMac was thus entitled to the entire excess sale proceeds, which totaled **$94,555.65**. This filing by Italiano emphasized the deed received from the sheriff was subject to the mortgage of PennyMac who held the primary claim as the senior lienholder on the property, had priority as to the excess proceeds from the sheriff sale, and was entitled to satisfaction from the proceeds. (7/11/24 Proposed Findings) (quoting law that a mortgage holder can bring a claim in the foreclosure action and share in the

proceeds according to priority after the foreclosure sale by filing a motion for distribution of excess funds).

**{¶31}** On August 6, 2024, the trial court denied the debtor's motion seeking reconsideration or vacation (and maintained its order that vacated the order distributing proceeds to the debtor). The court pointed out the excess proceeds from the sale totaled $94,555.65 after the costs and the junior lienholder's mortgage were paid. The court held R.C. 2329.44 spoke to the duty of the clerk and did not prohibit a court from distributing proceeds according to priority among the claimants, even non-foreclosed ones (and even ones who enter the action at distribution), citing the case law used by PennyMac and Italiano. The court found PennyMac placed its prosecution of the action on hold (while Huntington proceeded with foreclosure on its junior lien) in an attempt to work with the debtor on loan modification or reinstatement. The court also pointed out the debtor would receive a windfall if the excess proceeds were distributed to her rather than being used toward the mortgage for the new owner.

**{¶32}** The court specifically observed, "Equity demands the funds in the hands of the Clerk be paid to the Plaintiff in *partial satisfaction* of the Plaintiff's Mortgage." (Emphasis added.) (8/6/24 J.E.). Nevertheless, this judgment concluded by ordering the excess proceeds to be held by the clerk pending further court order.

**{¶33}** As a result, on September 17, 2024, PennyMac filed a motion for distribution of these excess proceeds. The motion pointed out PennyMac held the first mortgage and the purchaser bought the property subject to that mortgage with a total amount due and owing of **$111,030.01 as of September 20, 2024**. The motion therefore requested the court use its equitable powers to distribute to PennyMac, in partial satisfaction of its claim, the entire $94,555.65 in the clerk's possession (which remained after the foreclosure distributions for taxes, Huntington's junior lien, and costs). It was noted this would represent a sizable partial payment allowing Italiano Holdings, LLC to "pay the balance more easily."

**{¶34}** An affidavit with exhibits in support accompanied PennyMac's motion. The affiant itemized the figures constituting the total amount due of $111,030.01. (An introduction explained attorney fees were not being sought due to a reading of Ohio law). No response was filed.

Case No. 25 MA 0007

**{¶35}** A telephone hearing was scheduled on the motion. After being continued twice at the request of Italiano's attorney, this hearing proceeded on December 12, 2024. Counsel for PennyMac and counsel for the debtor appeared via telephone, and counsel for Italiano appeared live.

**{¶36}** On December 18, 2024, the trial court issued the judgment entry on appeal. Initially, the entry said the case was before the court "upon the request of the Defendants for the release of excess funds on deposit with the Mahoning County Clerk of Courts." The court observed a "notice was issued from the clerk to the Defendants and the request of the Defendants were all made pursuant to Ohio Revised Code 2329.44" (the statute dealing with the clerk issuing a notice about the debtor's ability to demand excess sale proceeds).[3] The entry then stated:

> The Court previously issued an Order on or about the 6th day of August, 2024 in which it determined that the sum of $94,555.65, which was currently being escrowed by the Mahoning County Clerk of Courts, shall be payable to the Plaintiff, PennyMac Loan Services, LLC.
>
> The determination to pay the aforementioned sum to the Plaintiff was determined even though the Plaintiff failed to proceed at the proper time with their Complaint. As previously determined, the real estate was purchased at sheriff's auction by Third-Party Defendant, Jonathan Italiano. As a result, the Plaintiff shall provide to all counsel and the Court the principal that is due and owing as of December 12, 2024. The Third-Party Defendant, Jonathan Italiano, shall then pay within thirty (30) days to the Plaintiff the sum due and owing from the principal minus the $94,555.65. The Third-Party Defendant, Jonathan Italiano, shall not be required to pay

---

[3] In the entry on appeal, the specific reference *to only the debtor's motion* for distribution of excess proceeds suggests the court was proceeding under the premise that after the court vacated its distribution to the debtor and denied the debtor's subsequent motion to reconsider/vacate, the debtor's initial request for distribution of excess proceeds remained undecided. (Still, the court's denial of reconsideration declared, "Equity demands the funds in the hands of the Clerk be paid to the Plaintiff in partial satisfaction of the Plaintiff's Mortgage.") The entry on appeal did not specifically mention *PennyMac's pending motion* for distribution of excess proceeds but nevertheless contained orders seemingly defining PennyMac's right on the amount it could receive on the mortgage that survived the sale.

any interest that has accrued or any court costs or attorney fees incurred by the Plaintiff.

(12/18/24 J.E.). The entry appears to have been drafted and provided to the court by counsel for Italiano, who was the only attorney appearing live at the hearing and who signed the instructions for service below the judge's signature.[4]

**{¶37}** PennyMac filed a timely notice of appeal. After a mediation stay, this court issued a limited 28-day remand for the trial court to address PennyMac's Civ.R. 60(A) motion (asking to clarify or correct). (4/11/25 J.E.) (And directing PennyMac to file an amended notice of appeal or a new notice of appeal after the trial court issued a decision). When that remand expired, PennyMac asked for a remand extension of 28 days, pointing out the trial court held a status conference the day before the remand expired but had not yet ruled. (5/14/25 Mot.) This court partially granted the motion by extending the remand until May 30, 2025 and said no further extensions would be allowed. (5/16/25 J.E.).

**{¶38}** However, the trial court did not issue an order until June 13, 2025, wherein the court purported to clarify "the interpretation of the Order dated December 13, 2024" by stating:

the Court has determined that the balance due and owing to the Plaintiff is the sum of $94,555.65 plus any interest that would have accumulated on the amount due on that day minus the $94,555.65 from December 13, 2024 to the present. The Plaintiffs are to request that the $94,555.65 is to be paid to them forthwith pursuant to the prior Order of this Court.

(6/13/25 J.E.).

**{¶39}** As to the first quoted sentence, we point out the journalized date of the written order was *the eighteenth* of December 2024 and said order recited the hearing date as *the twelfth* of December 2024. We also note the sentence says PennyMac was entitled to $94,555.65 (the full amount of excess proceeds) but talks of interest on that amount (instead of a principal amount with interest) and relates it to the date of the hearing

---

[4] The judgment refers to the obligations of "Third-Party-Defendant Jonathan Italiano" without mentioning the entity. This individual signed the sale contract on behalf of *the purchaser, Italiano Holdings, LLC,* and his motion to intervene appeared to be in his capacity *as the president of the LLC property owner.* We also note until this judgment, which implicitly allowed intervention, the motion to intervene had not been addressed by a written court order.

and continuing to the present. As to the second quoted sentence, we note PennyMac had already filed a motion for distribution of excess proceeds on September 17, 2024. Finally, we note Civ.R. 60(A) can only be used to correct a clerical error; yet, the trial court's June 13 order changed a holding on interest.

{¶40} In any event, neither party sought to appeal the June 13, 2025 order by amended appeal or otherwise. On June 18, 2025, we issued an entry pointing out the remand had expired on May 30, 2025 (without mentioning the trial court's June 13, 2025 order). The case was returned to the active docket. PennyMac's brief was filed without addressing the trial court's June 13, 2025 order. Appellee Italiano's response brief mentions the June 13, 2025 order but agrees it is not part of the record on appeal.

LAW

{¶41} As explained by the Ohio Supreme Court, "The order of foreclosure determines the extent of each lienholder's interest, sets forth the priority of the liens, and determines the other rights and responsibilities of each party in the action." *CitiMortgage, Inc. v. Roznowski*, 2014-Ohio-1984, ¶ 39. The judgment ordering foreclosure is a final order, which may not be challenged thereafter except through a timely appeal. *Id.* The confirmation of a foreclosure sale is an ancillary proceeding on the issue of whether the sheriff's sale conformed to the law, resulting in an order for the sheriff to issue a deed to the purchaser. *Id.* at ¶ 36, 40, citing R.C. 2329.31(A). A debtor has a limited right to appeal this order on the conformity with the law and any computations made. *Id.* at ¶ 40 (with no "second bite at the apple" regarding issues in the foreclosure order).

{¶42} The debtor did not appeal the foreclosure order, the confirmation order, or the vacation of the distribution of excess proceeds, and the debtor has not appeared on appeal.[5] Nevertheless, we begin by reviewing the statute relied on by the debtor below

---

[5] PennyMac had the right to proceed on a judgment on the note against the debtor in the action at law set forth in the first cause of action in the complaint and retained its mortgage rights set forth in the second cause of action in the complaint, which remained with the property as Huntington's foreclosure sale was subject to PennyMac's superior lien, all of which diminished any equities in favor of the debtor's motion for excess proceeds. *See generally Deutsche Bank Natl. Trust Co. v. Holden*, 2016-Ohio-4603, ¶ 5 (where the Supreme Court explained "legal action against the maker of a note who has defaulted on payments" versus the "equitable action on the mortgage to force a sale of the property based on the lender's secured position"). As set forth in our Statement of the Case, in addition to ordering foreclosure on Huntington's mortgage, *the default judgment against the debtor declared the cause was submitted to the court on PennyMac's complaint* (along with Huntington's filings) *and declared the debtor owed PennyMac the principal amount of $88,818.67 plus interest at 3.99 % per annum from November 21, 2021 plus advancements*.

Case No. 25 MA 0007

when seeking distribution of excess proceeds, R.C. 2329.44, as this statute is utilized in Italiano's response brief on appeal.

**{¶43}** This statute says if the sheriff deposited funds in excess of the amount required to satisfy the writ of execution with interest and costs, then the clerk shall "send to the judgment debtor whose property was the subject of the sale a notice that indicates the amount of the balance, informs the judgment debtor that the judgment debtor is entitled to receive the balance, and sets forth the procedure that the judgment debtor is required to follow to obtain the balance." R.C. 2329.44(A)(1)(a). The next division provides: "the clerk of the court that issued the writ of execution, on demand and whether or not the notice required by division (A)(1) or (2) of this section is provided as prescribed, shall pay the balance to the judgment debtor or the judgment debtor's legal representatives." R.C. 2329.44(B)(1).

**{¶44}** However, as the trial court held, this statute deals with the clerk's obligation and does not restrict the court's distribution of funds where there remain lienholders after a sheriff's sale. (8/6/24 J.E.), citing *Treasurer of Cuyahoga Cty. v. Berger Props. of Ohio, L.L.C.*, 2021-Ohio-3204, ¶ 11 (8th Dist.) (where the mortgagor-debtor argued a bank who appeared after the foreclosure sale should not receive excess proceeds). "[W]hile a mortgagor may, upon demand, have a statutory right to excess proceeds from a foreclosure sale, this right is secondary to the legitimate demands for excess proceeds of mortgagees that held liens on the foreclosed property." *Third Fed. S. & L. Assn. of Cleveland v. Strong*, 2015-Ohio-3009, ¶ 15 (10th Dist.).

**{¶45}** As set forth in the cases cited by the trial court in an earlier order supporting PennyMac's position: "it is a well-settled rule of practice that in foreclosure actions claims may be brought in or filed up to the time of distribution, and [those claims] may share in the proceeds according to priority." *Stidham v. Wallace*, 2013-Ohio-2640, ¶ 9 (12th Dist.) (where the lienholder did not answer or respond in the foreclosure action but then asserted its lien and sought proceeds after the foreclosure sale), quoting *Farmers S. & L. Co. v. Robison*, 1976 WL 188521, *4 (7th Dist. Feb. 11, 1976); *see also Strong* at ¶ 19. In the *Robison* case, this court agreed a prior lienholder is permitted to enter the action even after a sale to be included in an order of distribution of excess proceeds where the

parties' rights to the proceeds have not been adjudicated. *Robison* at *4 (where the lienholder obtaining proceeds late already had a judgment).

**{¶46}** Statutorily, it is also clearly recognized that a junior mortgage holder may foreclose on property subject to a senior mortgage without the senior mortgage holder being required to simultaneously proceed with the foreclosure in order to protect their rights. *See* R.C. 2329.20. In such event, the senior mortgage remains unaffected, as evidenced in the following statute:

> Except as otherwise provided in this section or sections 2329.51 and 2329.52 of the Revised Code, no tract of land shall be sold for less than two-thirds the amount of the appraised value as determined pursuant to section 2329.17 of the Revised Code. *In all cases in which a junior mortgage or other junior lien is sought to be enforced against real estate by an order, judgment, or decree of court, subject to a prior lien thereon, and such prior lien, and the claims or obligations secured thereby, are unaffected by such order, judgment, or decree, the court making such order, judgment, or decree, may determine the minimum amount for which such real estate may be sold*. In such a case, the minimum amount shall be not less than two-thirds of the difference between the appraised value of the real estate as determined in that section, and the amount remaining unpaid on the claims or obligations secured by such prior lien.

(Emphasis added.) R.C. 2329.20.

**{¶47}** The trial court's foreclosure entry specifically cited this statute and implemented the statute in declaring the junior lienholder's foreclosure sale was subject to PennyMac's senior mortgage, which remained unaffected, and in explaining the method for arriving at the minimum bid for the ordered sale.

**{¶48}** "A foreclosure action is a civil action in equity." *Chemical Bank of New York v. Neman*, 52 Ohio St.3d 204, 210 (1990), citing, *Union Trust Co. v. Lessovitz*, 122 Ohio St. 406 (1930), paragraph one of the syllabus (an action with "the features of foreclosure, priority of liens, and equitable subrogation" constitutes a "chancery case"). The Supreme Court has set forth some steps in a "typical" action in equity to foreclose:

a preliminary title search to determine all parties in interest; filing of the foreclosure . . . complaint . . .; service of process; a hearing . . .; the decree or judgment; notice of sale; actual sale and issuance of the certificate of sale; report of the sale; *proceedings for determination of the right to any surplus*; . . . and the entry of a decree for a deficiency.

(Emphasis added.) *Id.* at 210-211, quoting *Nelson & Whitman*, *Real Estate Finance Law*, § 7.11, at 506 (2d Ed. 1985).

**{¶49}** In general, the abuse of discretion standard of review applies when reviewing the decisions of a trial court sitting in equity or considering matters of equitable relief. *See Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275 (1984). An abuse of discretion exists if the court's decision was arbitrary, unreasonable, or unconscionable; this standard requires more than an error of judgment. *Id.* In *Aveni*, the Supreme Court defined unreasonable as irrational and defined arbitrary as lacking adequate determining principles or ungoverned by fixed rules or standard. *Id.*

**{¶50}** PennyMac acknowledges the law stating the distribution of excess proceeds from a foreclosure sale falls within the trial court's discretion in exercising equitable powers. In fact, PennyMac's second assignment of error presents an alternative, secondary argument under the abuse of discretion standard of review.

**{¶51}** First, however, PennyMac argues the threshold issue requires the application of a de novo standard of review due to the error of law raised about the trial court exceeding its jurisdiction or authority. In other words, if the order on appeal did not violate a statute or prior court orders, then an abuse of discretion would apply to the allocation of proceeds; however, where the order distributing proceeds limited rights already enshrined in prior final orders, the issue of whether such decision was within the trial court's authority is a question of law.

**{¶52}** Questions of law are reviewed under a de novo standard of review, which requires an independent review of the issue without giving deference to the trial court's determination. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). For instance, as the Supreme Court explained, the interpretation of a statute is a question of law reviewed de novo. *State v. Pariag*, 2013-Ohio-4010, ¶ 9. It has also been observed that the mere fact that a foreclosure proceeding derived from equity does

not provide a trial court authority to create a new remedy in a statutory foreclosure action. *See Wells Fargo Bank, N.A. v. Young*, 2011-Ohio-122, ¶ 29, 45-50, 59-63 (2d Dist.) (discretion in equitable matters cannot override statutes).

{¶53} Using the de novo standard of review, PennyMac sets forth its first assignment of error, claiming the trial court lacked any discretionary authority to alter a prior order applying R.C. 2329.20 and fully protecting PennyMac's rights as the superior lienholder.

<u>ASSIGNMENT OF ERROR ONE</u>

{¶54} As mentioned, PennyMac sets forth two assignments of error, the first of which contends:

"THE TRIAL COURT ERRED IN ITS ORDER DATED DECEMBER 18, 2024, BY MARSHALING AND LIMITING THE PLAINTIFF'S NON-FORECLOSED MORTGAGE, IN VIOLATION OF R.C. 2329.20, THE DECREE OF FORECLOSURE FILED JANUARY 31, 2023, AND THE AMENDED ORDER CONFIRMING THE SALE FILED APRIL 15, 2024."

{¶55} PennyMac's appeal is based on the language of the December 18, 2024 order seemingly limiting PennyMac to the "principal" balance of the mortgage (which was $88,818.67) even though the total payoff balance was $111,030.01 at the time of PennyMac's September 2024 motion for distribution of excess proceeds. PennyMac observes by limiting its rights to collecting only the principal from Italiano and by saying Italiano had no duty to pay interest or costs, the trial court's December 18, 2024 order re-adjudicated PennyMac's mortgage rights and seemed to disallow PennyMac from seeking further enforcement of the mortgage against Italiano's newly-purchased property despite it being sold subject to the mortgage under prior court orders.

{¶56} Accordingly, PennyMac argues the court exceeded its authority by acting to marshal and limit the scope of its mortgage rights when the court's foreclosure order previously ordered the foreclosure sale would be subject to PennyMac's senior mortgage under R.C. 2329.20 and reiterated this in the order confirming the foreclosure sale (and in subsequent entries dealing with the debtor's requests for excess proceeds). PennyMac notes the final order of foreclosure and the final order confirming the sale were not appealed and urges they could not be modified except as permitted by rules such as Civ.R. 60(B).

<u>Case No. 25 MA 0007</u>

**{¶57}** It is pointed out the stage of the action before the trial court was merely the distribution of excess proceeds and the issue before the court was whether those proceeds should be paid to PennyMac or whether they could be paid to the debtor (despite the senior lienholder's pending action and sale-surviving mortgage on the property already recognized and protected). PennyMac states its rights were materially altered by the December 18, 2024 entry, which is the order on appeal here, even though there was no request filed by Italiano for the modifications made by the trial court. Rather, Italiano submitted multiple filings in support of PennyMac's opposition to the debtor receiving any excess proceeds and asking the court to direct the entire amount to PennyMac.

**{¶58}** Initially, PennyMac urges our review of this argument is de novo with no deference to the trial court because a question of law is raised as to whether the trial court's order exceeded its "jurisdiction or authority." Subsequently (in the reply brief), PennyMac describes the argument as a lack of "subject matter" jurisdiction, saying it results in a void judgment and is a question of law reviewed de novo.

**{¶59}** On the latter argument, we note PennyMac filed a timely appeal from the judgment on appeal and thus need not resort to nullifying an unappealed judgment as void; also, PennyMac is not attempting to *avoid* res judicata principles. *See generally State v. Jenkins*, 2025-Ohio-1357, ¶ 15 (7th Dist.) (observing how appellants often claim the voidness doctrine applies in order to evade timeliness and res judicata prohibitions). Rather, PennyMac is protesting the court's alteration of rights recognized by statute and declared under prior final orders.

**{¶60}** As the Supreme Court has explained, case law discussing errors related to "jurisdiction" do not always involve a lack of jurisdiction of the type that renders a judgment void such as subject matter jurisdiction. *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 10-12, 21-22. "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 18.

**{¶61}** Notably, "the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends" to all legal and equitable actions unless

specifically excluded by the law and thus "actions in foreclosure are within the subject-matter jurisdiction of a court of common pleas." *Id.* at ¶ 20. "[T]he focus is on whether the forum itself is competent to hear the controversy." *State v. Harper*, 160 Ohio St.3d 480 at ¶ 23.

{¶62} Where the trial court had jurisdiction over the subject matter of the action and over the parties, subsequent errors involve the "exercise of the jurisdiction" already conferred. *Id.* at ¶ 26 (and an error in the exercise of jurisdiction renders the judgment voidable, not void). This "third type of jurisdiction" is also known as "jurisdiction over a particular case" or "authority to proceed or rule on a case" and involves a consideration of the parties' rights. *Kuchta* at ¶ 18-23 ("If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void.").

{¶63} Here, the root of PennyMac's argument does not truly dispute the trial court had jurisdiction over a foreclosure action, which includes motions to distribute excess proceeds filed in the action. In fact, PennyMac filed such a motion, which was pending when the trial court made the order on appeal (purportedly ruling on the debtor's competing motion for distribution). The crux of the issue being addressed is whether the court exceeded its authority *in this action*, which represents the third type of jurisdiction.

{¶64} Nevertheless, this conclusion does not foreclose the application of a de novo standard of review where a question of law is raised. As explained in the previous section setting forth the applicable law, arguments as to whether a court altered a party's rights set forth in a prior final order and concerning the application of a statute can present legal questions even if a motion was intended to invoke equitable authority. Contrary to Italiano's contention, the main issue presented under this assignment of error does not involve the question of discretion on disbursement of excess proceeds between a debtor and creditor but concerns the issue of the court's authority to limit the rights of the senior lienholder in favor of a third-party purchaser despite prior foreclosure and confirmation orders expressly protecting those statutorily-recognized rights.

{¶65} As to those rights belonging to the senior lienholder, we considered whether the trial court actually intended to state Italiano was responsible for paying PennyMac the total payoff balance when it ordered Italiano to pay the "principal" balance. The trial court

Case No. 25 MA 0007

spoke of Italiano being obligated to pay PennyMac the principal minus the amount of excess funds; yet, the amount of excess funds exceeded the principal. In addition, the court asked for a disclosure of "the principal that is due and owing as of December 12, 2024." However, as PennyMac points out, the principal did not change after the debtor's default in November 2021 while the payoff amount would have increased due to interest due under the terms of the mortgage. Also, although the amount representing principal plus interest may not be as simple to ascertain by an obligor, the principal itself ($88,818.67) was well known in this case. This amount was in the complaint, in the foreclosure order, in Italiano's own proposed findings of fact and conclusions of law (filed in response to the debtor's motion to reconsider/vacate), and in the affidavit supporting PennyMac's motion to distribute excess proceeds. These filings also recognized PennyMac was entitled to standard mortgage items including interest (3.99% per annum), costs, and advances.

{¶66} Nevertheless, the judgment on appeal employed the word "principal" in defining rights and obligations and concluded by declaring Italiano was not obligated to pay any accrued interest or costs. This essentially limited PennyMac's rights, which were protected by the foreclosure order and which were reiterated in the confirmation order. In effect, the judgment on appeal indicated the trial court reconsidered the protection. At one point, the court recognized its former belief that PennyMac should receive the entire $94,555.65 sum on escrow (towards the mortgage amounts due) but then scolded PennyMac for "fail[ing] to proceed at the proper time with their Complaint."

{¶67} However, the procedure utilized by PennyMac was performed with the court's blessing and specifically endorsed by the prior orders and by statutory law. *See* R.C. 2329.20 (discussing this scenario in setting the minimum bid). As further quoted in full above in the section setting forth the applicable law, the statute refers to "all cases in which a junior mortgage or other junior lien is sought to be enforced against real estate by an order, judgment, or decree of court, subject to a prior lien thereon, and such prior lien, and the claims or obligations secured thereby, are unaffected by such order, judgment, or decree . . ." *Id.*

{¶68} To the extent the trial court's December 18, 2024 entry limited PennyMac's mortgage rights, the trial court exceeded its authority. The foreclosure order protected

PennyMac's rights by stating the foreclosure sale would be subject to PennyMac's mortgage and the order confirming the sale reiterated this protection of PennyMac's rights. The court could not thereafter diminish those rights by using a pending motion for distribution of excess proceeds to limit what PennyMac could recover from Italiano as the new purchaser of the property subject to the mortgage.

**{¶69}** Italiano purchased the property at a sale that was explicitly advertised as being subject to PennyMac's mortgage. The minimum bid was expressly set based on PennyMac's mortgage under R.C. 2329.20. Italiano did not intervene before confirmation, challenge the notice in the advertisement, or seek to set aside the sale. Notably, upon seeking to intervene in the action post-confirmation, Italiano sought *to support PennyMac's right to the full amount of the excess proceeds* and to oppose the debtor's request for the proceeds. In more than one filing, Italiano expressly agreed the court should distribute to PennyMac the entire excess sale proceeds of $94,555.65 because PennyMac was entitled to the money the debtor owed under the mortgage.

**{¶70}** Italiano had no discernible request pending for the limitation imposed by the trial court in the December 18, 2024 order. The court had before it a request by PennyMac, which was effectively joined by Italiano. Theoretically, the court also had before it a request by the debtor (albeit the debtor's motion seemed to have already been disposed of in the judgment denying the debtor's motion to reconsider and vacate). We conclude the trial court's order went beyond its authority in distributing excess proceeds, as the court had no authority to diminish the rights of the senior mortgage holder in favor of the third-party purchaser and in contradiction of the foreclosure order and confirmation order.

**{¶71}** Accordingly, this assignment of error is sustained, and the December 18, 2024 judgment is reversed and vacated with instructions on remand, as provided further herein.

**{¶72}** In addition to asking for vacation of said judgment under this assignment of error, PennyMac also asks this court to order the trial court to distribute the excess proceeds to PennyMac in partial satisfaction of its mortgage, which is what the trial court said it would do in the August 6, 2024 order (which PennyMac calls "the Order on Excess Proceeds"). The August 6, 2024 order was the denial of the debtor's motion to

Case No. 25 MA 0007

reconsider/vacate the court's May 29, 2024 order vacating the May 22, 2024 order distributing the excess proceeds to the debtor. Nevertheless, we find it appropriate to remand with instructions to order the distribution of excess proceeds to PennyMac, based on the prior proceedings or orders and *as jointly requested below by Appellant PennyMac and Appellee Italiano*. The excess amount held by the clerk of courts shall be paid to PennyMac and applied to the balance owed on its mortgage with the first lien position of PennyMac continuing until the remaining balance, together with any, and all accrued interest, is paid in full.

**{¶73}** Even Italiano's arguments on appeal do not support the withholding of the excess sale proceeds from PennyMac; instead, Italiano seems focused on avoiding liability for amounts exceeding the total of the escrowed funds. But, forever foreclosing PennyMac from recovering what was owed on the mortgage exceeded the court's authority at this stage of the proceedings under the circumstances of this case.

ASSIGNMENT OF ERROR TWO

**{¶74}** PennyMac sets forth an alternative argument in the second assignment of error, which provides:

"THE TRIAL COURT ERRED IN ITS ORDER DATED DECEMBER 18, 2024, BY DETERMINING THAT PLAINTIFF'S RECOVERY UNDER ITS NON-FORECLOSED MORTGAGE WOULD BE LIMITED TO THE PRINCIPAL BALANCE DUE ON ITS LOAN, REGARDLESS OF INTEREST, COSTS, OR ATTORNEY FEES, IN VIOLATION OF R.C. 2329.20, THE DECREE OF FORECLOSURE FILED JANUARY 31, 2023, AND THE AMENDED ORDER CONFIRMING SALE FILED APRIL 15, 2024."

**{¶75}** PennyMac reiterates various arguments and concludes the trial court abused its discretion by ordering payment of the principal balance minus the amount held by the clerk, which was less than the total payoff (and which essentially declared Italiano had no liability to pay anything on the mortgage to which its property was subject). PennyMac also argues the trial court abused its discretion by attempting to define PennyMac's mortgage rights by relating them to the date of the last hearing in December 2024 and declaring Italiano had no liability for interest accrued.

**{¶76}** We incorporate our analysis in the prior assignment of error and the previous section setting forth the law. As stated in the cases cited by the trial court in an

earlier order supporting PennyMac's position: "it is a well-settled rule of practice that in foreclosure actions claims may be brought in or filed up to the time of distribution, and [those claims] may share in the proceeds according to priority." *Stidham*, 2013-Ohio-2640, at ¶ 9 (12th Dist.) (where the lienholder did not answer or respond in the foreclosure action but then asserted its lien and sought proceeds after the foreclosure sale), quoting *Farmers S. & L. Co. v. Robison*, 1976 WL 188521, *4 (7th Dist. Feb. 11, 1976) (a prior lienholder is permitted to enter the action even after a sale to be included in an order of distribution of excess proceeds where the parties' rights to the proceeds have not been adjudicated); *see also Strong*, 2015-Ohio-3009, at ¶ 19.

{¶77} Contrary to Italiano's position on appeal, there was no improper delay by PennyMac that opened some path to justifying a sua sponte limitation of mortgage rights as punishment in the proceedings before the court at the time.

{¶78} For instance, Italiano points to prior cancellations before any sale took place. Some of these appear to have been attributable to Huntington or to individuals responsible for advertising the sheriff's sale. *See* Statement of the Case above. Regardless of fault, those delays did not affect *the rights of Italiano*, a future purchaser with no interest in any portion of the case at those times. Despite the cited background of delayed sales, Italiano's bid at the later foreclosure sale was expressly subject to PennyMac's mortgage and no objections to the notice or title were raised as preventing the sale as having proceeded subject to the mortgage. Pennymac's first lien position remains of record until the total mortgage balance is paid in full, together with any and all accrued interest.

{¶79} By way of further example, the delay in the months after the April 15, 2024 confirmation order and April 29, 2024 sheriff's deed to Italiano was due to the debtor's near-interception of almost $94,555.65 in excess proceeds. The order confirming the sale anticipated further proceedings by PennyMac and held the excess proceeds after distributing to the county for taxes and to Huntington for its foreclosed junior mortgage. However, the debtor's motion for excess proceeds was then granted by the trial court despite the magistrate setting the matter for a hearing, potentially because the debtor's motion failed to mention the background involving the sale being subject to PennyMac's mortgage, which would have invoked distinct case law. *See, e.g., Strong*, 2015-Ohio-

3009, at ¶ 15 (10th Dist.) ("while a mortgagor may, upon demand, have a statutory right to excess proceeds from a foreclosure sale, this right is secondary to the legitimate demands for excess proceeds of mortgagees that held liens on the foreclosed property").

**{¶80}** Notably, these proceeds, momentarily directed to the debtor, were funds *Italiano* deeply desired to be credited to the mortgage that applied to the property it purchased for $168,400 (appraised at $243,000 according to the sale advertisement). One could surmise Italiano had more to lose than PennyMac by the debtor's receipt of the funds, as PennyMac could foreclosure on Italiano's property to receive what was owed under the mortgage. Again, since Italiano is raising the topic of delay, we note here Italiano did not seek to intervene until after the debtor filed a motion to reconsider/vacate the court's granting of PennyMac's motion to vacate (and Italiano essentially requested enforcement of PennyMac's previously ordered rights).

**{¶81}** After the debtor's requests were disposed of and it was assured the debtor would not receive the funds, PennyMac formally requested them with an affidavit and exhibits showing the amount due at the time of the filing (instead of merely relying on the prior motions and responses filed against the debtor's position). This procedure was seemingly desired by the trial court's prior orders. That is, just prior to PennyMac's motion, the court declared PennyMac was entitled to the entire excess sale proceeds of $94,555.65 but then maintained the clerk's holding of the funds. (8/6/24 J.E.) (denying debtor's "reconsideration" motion seeking to vacate a prior vacation). During that time, PennyMac was also trying unsuccessfully to serve the debtor in order to proceed to judgment on the note as well as the mortgage. Italiano did not respond to or move against PennyMac's request. Lastly, the record shows the two months of hearing delays after PennyMac's final motion to distribute excess proceeds was not attributable to PennyMac.

**{¶82}** Furthermore, the reasoning proffered in Italiano's brief on appeal supporting the trial court's decision is unreasonable. The mortgage existed with interest accruing. There is no indication the delay after the issuance of the sheriff's deed benefitted PennyMac more than if PennyMac had simply been paid the funds owed at that time. And, there is no indication the delay harmed Italiano more than if Italiano had paid the balance due (with cash or a new mortgage) closer to the time of receiving the sheriff's deed (especially considering the interest rate).

Case No. 25 MA 0007

{¶83} Through the judgment Italiano's counsel drafted for the court, Italiano secured more than it had been publicly seeking, with no opportunity for briefing on this veiled idea to limit the extent of Italiano's liability on the property that was purchased subject to PennyMac's mortgage. Since first appearing on the issue in June 2024, Italiano had been asking the court to distribute the entire amount of excess proceeds to PennyMac. This result, requested below by both PennyMac and Italiano, will result in a credit to the mortgage payoff balance in the amount of those proceeds. Upon PennyMac's supported motion seeking the proceeds, the decision effectively limiting Italiano's liability and reducing PennyMac's mortgage rights would constitute an abuse of discretion even assuming discretion existed on this matter. *See* Assignment of Error 1 (error of law in exceeding authority).

{¶84} For the foregoing reasons, the trial court's December 18, 2024 order is reversed and remanded with instructions for the trial court to vacate and to order the clerk to release the remaining sale proceeds to PennyMac. The excess amount held by the clerk of courts shall be paid to PennyMac and applied to the balance owed on its mortgage with the first lien position of PennyMac continuing until the remaining balance, together with any, and all accrued interest, is paid in full.

Hanni, J., concurs.

Dickey, J., concurs.

Case No. 25 MA 0007

[Cite as *PennyMac Loan Servs., L.L.C. v. Nespeca*, 2025-Ohio-5622.]

---

For the reasons stated in the Opinion rendered herein, the final judgment and order of the Court of Common Pleas of Mahoning County, Ohio, is reversed. We hereby remand this matter to the trial court with instructions to vacate and to order the clerk to release the remaining sale proceeds to PennyMac according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**